EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María Domínguez Vargas<br>    Recurrida<br><br>              v.<br><br>Great American Life Assurance Company<br>of Puerto Rico, Inc.<br>    Peticionario | Certiorari<br><br>2002 TSPR 104<br><br>157 DPR ـــــ |

Número del Caso: CC-2001-550

Fecha: 12/julio/2002

Tribunal de Circuito de Apelaciones:
                        Circuito Regional III

Juez Ponente:
                        Hon. Carlos Soler Aquino

Abogado de la Parte Peticionaria:
                        Lcdo. José Antonio Soto Ríos

Abogado de la Parte Recurrida:
                        Lcdo. José E. Colón Rodríguez

Materia: Incumplimiento de Contrato y Daños y Perjuicios

        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace como
        un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Domínguez Vargas

    Recurrida

        v.                      CC-2001-550        Certiorari

**Great American Life
Assurance Company of
Puerto Rico, Inc.**

    **Peticionaria**

**Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO**

**San Juan, Puerto Rico a 12 de julio de 2002.**

**I**

**Great American Life Assurance Company of Puerto Rico, Inc. (en lo sucesivo "GA Life") expidió una póliza de beneficios por muerte accidental y desmembramiento a favor del Sr. Ángel Luis Colón Vargas,(en lo sucesivo "el asegurado") efectiva el 1 de junio de 1988. La Sra. María Domínguez Vargas (en adelante "la Sra. Domínguez" o "la recurrida"), madre de éste, fue designada como la beneficiaria de la póliza. En cuanto a la cubierta de la póliza, ésta proveía beneficios en**

caso de que el asegurado falleciera por causas accidentales, y beneficios por pérdidas específicas. [1]

El 13 de agosto de 1998, el Sr. Colón Vargas murió como consecuencia de una caída accidental. Al día siguiente, su cuerpo fue sometido a una autopsia, de la cual se determinó que falleció a causa de un severo trauma cráneo cerebral. Además, se realizó un análisis toxicológico del cual se desprende que al momento del accidente tenía un contenido de 0.09% de alcohol en la sangre.

---

[1] Al respecto disponía lo siguiente:

(1) BENEFICIO POR MUERTE POR MEDIOS ACCIDENTALES, SEGUN SE DEFINE AQUI—

En caso de que tales lesiones se efectúen únicamente por medios accidentales y resulten en la muerte del Asegurado dentro de noventa (90) días después de la fecha del accidente causante de tales lesiones, la Compañía pagará al Beneficiario designado en el Cuadro del Seguro la Suma Principal en vigor a la fecha del accidente, menos cualquier cantidad pagada o pagadera debido a tales lesiones bajo la Disposición (2); disponiéndose, sin embargo, que ningún beneficio será pagadero si cualquier enfermedad corporal o mental, o tratamiento médico o quirúrgico para la misma, en alguna forma causa o contribuye a la muerte del Asegurado, o si la muerte resulta de alguna de las causas excluidas en la Disposición (4). El pago de cualquier beneficio bajo esta disposición terminará la póliza.

(2) BENEFICIO POR PERDIDAS ESPECIFICAS, SEGUN SE DEFINE AQUI—

En caso de que tales lesiones resulten, mientras esta póliza esté en vigor, al Asegurado en una de las pérdidas establecidas más abajo por una causa no excluida de cubierta bajo la Disposición (4); la Compañía pagará al Asegurado una cantidad basada en la Suma Principal en Vigor en la fecha del accidente como sigue:

| | |
|---|---|
| Pérdida de Ambos Ojos | La Suma Principal |
| Pérdida de Ambas Manos | La Suma Principal |
| Pérdida de Ambos Pies | La Suma Principal |
| Pérdida de 1 Mano y 1 Pie | La Suma Principal |
| Pérdida de 1 Pie y 1 Ojo | La Suma Principal |
| Pérdida de 1 Mano y 1 Ojo | La Suma principal |
| Pérdida de Una Mano | ½ de la Suma Principal |
| Pérdida de Un Pie | ½ de la Suma Principal |
| Pérdida de Un Ojo | ½ de la Suma Principal |

Póliza de beneficios por muerte accidental y desmembramiento. Apéndice de la petición de *certiorari*, págs. 75-76.

La recurrida reclamó a GA Life los beneficios de la póliza. GA Life negó cubierta basándose en una cláusula de exclusión que en lo pertinente reza de la siguiente forma:

> **EXCLUSIONES – No se pagará beneficio alguno por esta póliza si la pérdida ocurriere** como resultado de
> . . .
> e) lesiones sufridas mientras el Asegurado se encuentre bajo los efectos de bebidas alcohólicas o embriagantes, o bajo los efectos de drogas narcóticas, depresoras estimulantes o alucinógenas, excepto aquellas recetadas por un doctor en medicina debidamente autorizado. (Énfasis suplido).
> . . . .[2]

Así las cosas, el 30 de diciembre de 1999, la recurrida presentó ante el Tribunal de Primera Instancia (TPI) una demanda por incumplimiento de contrato y daños y perjuicios en contra de GA Life. Luego de varios trámites, solicitó que se dictara sentencia sumaria declarando ha lugar sus reclamaciones. Alegó que la cláusula de exclusión era ambigua por no definir la frase "estar bajo los efectos de bebidas alcohólicas o embriagantes". Entendió, además, que por analogía debía interpretarse dicha cláusula tomando como base la presunción que establecía la Sec. 5-801(b)(1) de la entonces vigente Ley Núm. 141 de 20 de julio de 1960, 9 L.P.R.A. sec. 1041(b)(1) (1996), conocida como la Ley de Tránsito. La disposición antes citada disponía lo siguiente:

> (a)    . . .
>
> (b)    . . .
>
>      (1) Si al momento de análisis había en la sangre del conductor menos de diez (10) centésimas de uno (1) por ciento (.10 de 1%) de alcohol, por volumen (gramos en 100 mililitros avas partes de uno (1) por ciento (1%) por volumen de sangre), se presumirá concluyentemente que el conductor no estaba bajo los efectos de bebidas embriagantes al tiempo de cometer la alegada infracción. . . .[3]

GA Life se opuso a la solicitud de la recurrida y solicitó que se dictara sentencia sumaria desestimando la causa de acción en su contra. Arguyó que la legislación federal establece que una persona que tenga 0.08% de alcohol en su sangre se encuentra bajo los efectos de bebidas embriagantes. Señaló, además, que

---

[2] *Íd.*

[3] El Art. 7.02(a) de la vigente Ley Núm. 22 de 7 de enero de 2000, 9 L.P.R.A. sec. 5202, (capítulo conocido como "Ley de Vehículos y Tránsito de Puerto Rico), en vez de establecer una presunción, dispone que, "[s]erá ilegal per se, que cualquier persona conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en su sangre sea de ocho centésimas del uno por ciento (.08%), o más,

el informe toxicológico fue practicado al occiso luego de haber transcurrido 18 horas a partir del accidente, por lo que a su juicio éste debió tener un contenido de más de 0.20% de concentración de alcohol en su sangre al momento de los hechos. Respecto a la aplicación de la legislación puertorriqueña, indicó que ésta no le impone a las aseguradoras que definan la frase "estar ebrio", ni que establezcan un porcentaje o grado específico a los fines de determinar si el asegurado estaba bajo los efectos de bebidas embriagantes.

Las partes expresaron que no existía controversia legítima sobre hechos materiales y reconocieron que el asunto ante la consideración del tribunal versaba únicamente respecto a la interpretación de la cláusula de exclusión concernida. Por tal razón, el TPI procedió a dictar sentencia sumaria a favor de la recurrida, y aplicando por analogía la Sec. 5-801(b)(1) de la derogada Ley de Tránsito, determinó que el asegurado no estaba ebrio al momento del accidente. Además, condenó a GA Life al pago de la cubierta de la póliza, costas, intereses y honorarios de abogados.

Inconforme con las determinaciones del foro de instancia, el 2 de enero de 2001, GA Life acudió ante el Tribunal de Circuito de Apelaciones (TCA) mediante recurso de apelación. En síntesis, alegó que el TPI incidió al aplicar por analogía la presunción dispuesta en la derogada Ley de Tránsito, para así determinar que el asegurado no estaba ebrio al ocurrir el accidente. Además, le imputó al foro de instancia haber errado al imponerle el pago de honorarios de abogados.

El 31 de mayo de 2001, el TCA emitió Sentencia a los fines de confirmar el dictamen emitido por el TPI. Colegió que, el foro de instancia actuó correctamente al aplicar por analogía la presunción dispuesta por la anterior Ley de Tránsito entonces vigente. En cuanto a la imposición del pago de honorarios de abogados, el TCA expresó que no intervendría con la apreciación y conclusión del foro recurrido.

Por considerar que el TCA erró al adjudicar en sus méritos el recurso de apelación, el 6 de julio de 2001, GA Life presentó ante nos una petición de *certiorari*. Alega que, el TCA erró al confirmar al TPI por las siguientes razones: 1) al concluir que la cláusula de exclusión concernida debía ser interpretada a favor del asegurado, por ésta no ser clara o específica; 2) al aplicar por analogía la anterior Ley de Tránsito, y así, concluir que el causante no se encontraba bajo

según surja tal nivel o concentración del análisis químico o físico

los efectos de bebidas embriagantes al ocurrir el accidente; 3) al determinar que GA Life tenía la obligación de satisfacer a la recurrida el pago correspondiente por concepto de los beneficios de la póliza por muerte accidental; y 4) al determinar que había sido temeraria en su defensa, confirmando a su vez la imposición de pago de honorarios de abogados.

Expedido el auto mediante Resolución de 7 de septiembre de 2001, y contando con la comparecencia de las partes, procedemos a resolver.

## II

Las controversias en este caso giran en torno a la interpretación de una cláusula de exclusión, la cual exime al asegurador del pago de los beneficios de una póliza de seguro por muerte accidental, ello si el asegurado se encontraba bajo los efectos de bebidas alcohólicas o embriagantes al momento de su deceso. Antes de disponer de las controversias presentadas, primero, debemos enmarcar la póliza concernida dentro de las disposiciones correspondientes de la Ley Núm. 77 de 19 de junio de 1957, 26 L.P.R.A. sec. 101 *et seq.*, conocida como el Código de Seguros de Puerto Rico (en lo sucesivo "el Código de Seguros"); y segundo, procede que expongamos brevemente la normativa vigente sobre la interpretación de contratos de seguros.

### A.

Los Arts. 4.010 al 4.100 del Código de Seguros, 26 L.P.R.A. secs. 401-410, definen las distintas clases de seguros. En específico, el Art. 4.010 del Código de Seguros, 26 L.P.R.A. sec. 401, dispone lo siguiente:

> La intención es que la protección de ciertos seguros quede comprendida dentro de las definiciones de dos o más clases de seguros, según se expone en este Capítulo, y el hecho de que la protección de un seguro esté incluida dentro de una definición no excluirá dicha protección en cuanto a cualquier otra clase de seguro dentro de la definición de la cual la misma pueda razonablemente incluirse del mismo modo.

El seguro de vida es definido por el Art. 4.020 del Código de Seguros, 26 L.P.R.A. sec. 402, como sigue:

> es el seguro sobre vidas humanas o seguro correspondiente a las mismas, o relacionadas con éstas. Para los fines de este título el negocio de seguros de vida incluye la concesión de rentas anuales y beneficios dotales, beneficios adicionales en caso de muerte o mutilación por accidente o medios accidentales, beneficios adicionales en caso de incapacidad total o permanente del asegurado, y métodos opcionales para la liquidación de réditos.

---

de su sangre o aliento."

El Art. 4.030 del Código de Seguros, 26 L.P.R.A. sec. 403, define el seguro de incapacidad física de la siguiente forma:

es el seguro contra daños corporales, incapacidad, o muerte por accidente o medios accidentales, o los gastos ocasionados con tal motivo, seguro contra incapacidad o los gastos ocasionades [*sic*] por enfermedad, y cualquier otro seguro perteneciente a este ramo.

En cuanto al seguro de incapacidad, el mismo está regulado por los Arts. 16.010 al 16.360 del Código de Seguros, 26 L.P.R.A. secs. 1601-1636. A tenor del Art. 16.280 del Código de Seguros, 26 L.P.R.A. sec. 1628, el asegurador podrá incluir en la póliza una cláusula en la cual se libere de responsabilidad en aquellos casos en los cuales la pérdida sufrida o contraída por el asegurado sea consecuencia de éste hallarse ebrio o bajo la influencia de un narcótico.[4]

Como puede observarse, el seguro que aquí nos compete es sobre una vida humana, en el cual el pago de los beneficios está sujeto a que la muerte hubiese ocurrido por accidente o medios accidentales. Por tanto, la póliza suscrita por el asegurado y GA Life, cae dentro de las definiciones de los seguros de vida y de incapacidad física.

En resumen, conforme a lo discutido en este acápite, al contrato de póliza concernido le son aplicables las disposiciones referentes a los seguros de incapacidad. Por ende, la cláusula de exclusión antes referida debe ser analizada a la luz del Art. 16.280 del Código de Seguros, *supra*, y las normas de interpretación en cuanto a este tipo de contrato.

B.

El Art. 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125, dispone lo siguiente: "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso

---

[4] El Art. 16.280 del Código de Seguros, *supra*, dispone lo siguiente:

continúa...

... 4 continuación

La póliza podrá tener una cláusula como sigue:

*Bebidas embriagantes y narcóticos:* El asegurador no será responsable por ninguna pérdida sufrida o contraída como consecuencia del asegurado hallarse ebrio o bajo la influencia de un narcótico, a menos que fuere por prescripción médica.

o solicitud adherido a la póliza y que forme parte de ésta." Véase, *Díaz Ayala, et al. v. E.L.A.*, res. el 30 de marzo de 2001, 153 D.P.R. __, 2001 T.S.P.R. 40, 2001 J.T.S. 49.

Enmarcados dentro de la voluntad legislativa, hemos expresado lo siguiente: "[l]os términos de las pólizas de seguro deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces." *Morales Garay v. Roldán Coss*, 110 D.P.R. 701, 706 (1981). Además, *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994). (Énfasis suplido.) El derecho de seguros puertorriqueño confiere al asegurado el derecho a confiar en la cubierta que se le ofrece leyendo sus cláusulas conforme al sentido popular de sus palabras. *Íd.*

Reiteradamente hemos establecido que, cuando las cláusulas de un contrato de seguro son ambiguas, éstas se interpretaran vigorosamente en contra del asegurador, y liberalmente a favor del asegurado. *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139 (1996); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra; *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991). La razón es que, los términos de una póliza de seguros no son producto de la negociación de las partes, sino que, éstos son prefijados por el asegurador sin que el asegurado tenga la facultad de variarlos. *Meléndez Piñero v. Levitt & Sons of P.R.*, supra. Por tratarse de un contrato de adhesión, "[e]l asegurador, quien adopta o redacta las pólizas de seguro conforme a sus propios intereses sin la intervención directa del asegurado, tiene la obligación de hacer clara su intención; en otras palabras viene obligado a establecer en la póliza, de manera diáfana, los riesgos por los que viene obligado a responder." *Íd.*, a la pág. 547.

En *Quiñones López v. Manzano Pozas*, supra, a la pág. 155, establecimos claramente que, no se favorecerán las interpretaciones sutiles que tiendan a liberar al asegurador de su responsabilidad. "Corresponde a los tribunales buscar el sentido y significado que a las palabras de la póliza en controversia le daría una persona normal de inteligencia promedio que fuese a comprar la misma." *Íd.* Los tribunales están llamados a determinar cuáles eran las expectativas de las partes al perfeccionarse el contrato de seguro, manteniendo en perspectiva que toda ambigüedad debe ser resuelta a favor del asegurado. *A.A.A. v. Librotex*, 142 D.P.R. 820 (1997).

En cuanto a las cláusulas de exclusión, de ordinario éstas no son favorecidas, por lo que en un contrato de seguros éstas deben ser interpretadas

restrictivamente en contra del asegurador. *Quiñones López v. Manzano Pozas*, supra; *Rivera v. Insurance Co. of P.R.*, 103 D.P.R. 91 (1974).

Por supuesto, lo antes expresado no significa que toda cláusula se interprete a favor del asegurado. Ciertamente, una cláusula clara y libre de ambigüedad que favorece al asegurador debe considerarse obligatoria para el asegurado. *Quiñones López v. Manzano Pozas*, supra; *Díaz Ayala, et al. v. E.L.A.*, supra. En tales casos no se admitirá una interpretación que vulnere el claro propósito y voluntad de las partes. "Por el hecho que el asegurador redacte unilateralmente el contrato de seguro no podrá entenderse que éste necesariamente sea en perjuicio del asegurado toda vez que los formularios de pólizas se rigen por los preceptos legales estatuidos en el propio Código de Seguros." R. Cruz, *Derecho de Seguros*, Publicaciones JTS, 1999, Sec. 14.1, pág. 167.

No hay duda alguna de que las pólizas que se ofrecen y venden dentro de la industria de seguros en Puerto Rico son, de ordinario, las pólizas modelos que venden las compañías de seguros estadounidenses. *Quiñones López v. Manzano Pozas*, supra; *Guerrido García v. U.C.B.*, 143 D.P.R. 337; *Meléndez Piñero v. Levitt & Sons of P.R.*, supra. "En ese sentido, este Foro no ha descartado que al resolver aquellos pleitos de seguros en que se requiere interpretar las cláusulas de la póliza, se utilicen las normas del derecho angloamericano sin descartar las normas del derecho civil." *Guerrido García v. U.C.B.*, supra, a la pág. 347. (Énfasis suplido.) Véase además, *Quiñones López v. Manzano Pozas*, supra; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra; *Meléndez Piñero v. Levitt & Sons of P.R.*, supra.

III


Por estar íntimamente relacionados entre sí, atenderemos conjuntamente los primeros tres señalamientos de error alegados por GA Life.

Como mencionáramos anteriormente, GA Life estaba plenamente facultada por el Art. 16.280 del Código de Seguros, *supra*, para incluir la cláusula de exclusión aquí concernida. No empece, ello no resuelve la interrogante de si la cláusula según redactada adolece de cierto grado de ambigüedad.

La cláusula de exclusión incluida por GA Life, le exoneraba del pago de los beneficios de la póliza si el asegurado se encontraba "bajo los efectos de bebidas alcohólicas o embriagantes". La frase o terminología "bajo los efectos de bebidas alcohólicas o embriagantes", denota una disminución o pérdida de las facultades

físicas y mentales del individuo, causada por la presencia de alcohol en su cuerpo. Es decir, conforme al lenguaje utilizado en la póliza, la mera presencia de alcohol en el organismo del individuo no activa por sí sólo la cláusula de exclusión. Sino que, se requiere que la concentración de la sustancia alcohólica en el individuo sea tal que sus capacidades físicas, motoras y mentales se vean afectadas de manera que el funcionamiento del individuo sea uno distorsionado.[5]

Entendemos que, en su más corriente y usual acepción, no hay otra posible interpretación o significado para la frase "bajo los efectos de bebidas alcohólicas o embriagantes". Una frase que indica que se "está bajo los efectos de algo o alguien", intima la disminución o carencia total de control sobre sí mismo, ya sea de las facultades físicas y/o mentales del individuo.

Partiendo de lo antes dicho, es forzoso concluir que la frase o terminología ante nuestra consideración no hace que la cláusula sea ambigua.[6] No es un porcentaje de alcohol específico el que activa la cláusula de exclusión, sino el efecto o incapacidad que genere sobre el individuo. El hecho de que la aplicación de la cláusula dependa de varios factores respecto al individuo (tales como su metabolismo, condición física, peso y tolerancia a las sustancias, entre muchos otros factores) no hace que califiquemos a ésta como una imprecisa.

---

[5] En diversas jurisdicciones de los Estados Unidos, términos o frases análogos han sido interpretados de la misma manera. Sobre este particular, nos comentan Russ y Segalla que:

*The general rule is that the words "intoxicated" and similar terms require that the insured have [sic] used liquor or drugs to such an extent as to disturb the action of his or her mental or physical faculties, and that his or her sense of responsibility is substantially or materially impaired. Generally speaking, the exact wording of the exclusion clause is of very little importance as regards the rule, for the courts have construed the following phrases as the equivalent of the term "intoxicated" within the meaning of the above rule: "under the influence of intoxicating liquor," "in any degree under the influence of intoxicating liquor," being "affected by intoxicants," and "while intoxicated." L.R. Russ and T.F. Segalla, Couch on Insurance, 3d., West Group Pub., Vol. 10, Sec. 143.86, pág. 143-119.*

[6] Véase, *Blue Cross & Blue Shield of Fla., Inc. v. Steck*, 778 So.2d 374 (Fla. 2d Dist. C. App. 2001); *Mason*

continúa...

... [6] continuación

*v. Life & Casualty Ins. Co.,* 41 So.2d 153 (Fla. 1949); *Ludlow v. Life & Casualty Ins. Co.,* 217 S.W.2d 361 (Tenn. Ct. App. 1948).

Como corolario de lo antes señalado, correspondía a GA Life probar que el Sr. Colón Vargas estaba bajo los efectos de bebidas embriagantes y su relación causal con el accidente. La cláusula expresamente indica que GA Life no pagaría beneficio alguno si como resultado de estar ebrio hubiese ocurrido el accidente. Entendemos que, razonablemente un asegurado entendería y confiaría que una cláusula como la aquí concernida, entraría en vigor sólo si el accidente ocurriese como consecuencia de estar ebrio.

Ante cláusulas análogas, otras jurisdicciones no han vacilado en exigir al asegurador que demuestre una relación causal entre el accidente y la presencia de sustancias embriagantes o alcohólicas en el individuo.[7]

---

[7] Véase, *Holloway v. J.C. Penny Life Ins.,* 190 F.3d 838 (7th Cir. Ill. 1999); *Olson v. American Bankers Ins. Co.,* 35 Cal.Rptr.2d 897 (Col. App. 1994); *McGarrah v. Southwestern Glass Co.,* 852 S.W.2d 328, (Ark. Ct. App. 1993).

Al respecto, Russ y Segalla[8] señalan lo siguiente:

> *Under clauses excepting liability for injury or death in case of the insured's intoxication which are so phrased as to make the death or injury of the insured a sequel of his or her intoxication, however, the insurer must establish that the intoxication has some causative connection with the death or injury of the insured. Accordingly, where a policy does not cover injuries received by the insured as the "result" or "in consequence" of being intoxicated, or "caused" by intoxication, some causal connection must be shown.*

Además, GA Life señala que la cláusula que nos atañe "proviene" o tiene su génesis en el Art. 16.280 del Código de Seguros, *supra*. Ello demuestra que, al redactar la susodicha cláusula, GA Life tuvo la intención de recoger el espíritu de la disposición citada. El lenguaje del Art. 16.280 del Código de Seguros, *supra*, es claro y requiere una relación causal entre el accidente y el estar bajo los efectos de bebidas embriagantes o alcohólicas. "El asegurador no será responsable por ninguna pérdida sufrida o contraída como consecuencia del asegurado hallarse ebrio o bajo la influencia de un narcótico, a menos que fuere por prescripción médica." *Íd*. (Énfasis suplido.) Por tanto, ello demuestra que, contrario a lo planteado por GA Life, y conforme a la cláusula que nos atañe, ésta venía obligada a establecer la existencia de una relación causal entre el accidente que produjo la muerte del Sr. Colón Vargas y su estado de embriaguez.[9]

Conforme al Informe de Toxicología,[10] el análisis practicado al occiso para detectar la presencia de alcohol en la sangre circulante y sujeta a metabolismo, arrojó un resultado negativo. Además, dicho análisis refleja un nivel de 0.09% de alcohol respecto a una muestra de sangre tomada de un coágulo intracraneal. Estos resultados reflejan que al momento del accidente el asegurado tenía un 0.09% de alcohol en su sangre; así fue expresado en la carta aclaratoria emitida por el Instituto de Ciencias Forenses de julio de 2000.[11]

---

[8] *L.R. Russ and T.F. Segalla*, supra, Sec. 143:84, a la pág. 143–115.

[9] Por supuesto, ello luego de probar que se encontraba bajo los efectos de bebidas alcohólicas o embriagantes conforme a la definición antes señalada en esta ponencia, entiéndase que la concentración de la sustancia alcohólica en el individuo sea tal que sus capacidades físicas, motoras y mentales se vean afectadas de manera que el funcionamiento del individuo sea uno distorsionado.

[10] Informe de Toxicología; Apéndice de la petición de *certiorari*, pág. 85.

[11] Carta de julio de 2000, emitida por el Instituto de Ciencias Forenses; Apéndice de la petición de *certiorari*, pág. 96.

Empero, el hecho de que al momento del accidente el occiso tuviera 0.09% de alcohol en la sangre, no es suficiente para determinar o concluir que conforme a la cláusula de exclusión, éste se encontraba bajo los efectos de bebidas embriagantes. Correspondía al asegurador, GA Life, probar que dicho nivel de alcohol afectó las capacidades funcionales del asegurado, a tal grado, que ello fue la causa del accidente. En síntesis, GA Life no estableció los elementos necesarios para establecer su defensa de exclusión. En vez de establecer los elementos de defensa, se limitó a establecer que no habían hechos en controversia y que lo único que restaba era interpretar la cláusula de exclusión que nos atañe.

Aun cuando para la adjudicación de este caso resulta innecesario que evaluemos si es correcto utilizar por analogía la Sec. 5-801(b)(1) de la derogada Ley de Tránsito, entendemos que es fructífero expresarnos brevemente al respecto. Una disposición de la Ley de Tránsito que establezca una presunción para determinar si un conductor estaba o no ebrio o bajo los efectos de bebidas embriagantes, no siempre puede ser utilizada por analogía para determinar si, conforme a una cláusula de exclusión como la aquí concernida el asegurado se encontraba bajo los efectos de bebidas embriagantes. Su aplicación debe atemperarse dentro del contexto de la actividad o evento realizado por el asegurado al ocurrir el accidente, en comparación con la capacidad requerida por la Ley de Tránsito al realizar la actividad regulada por ésta. No obstante, su aplicación en casos como el de autos no siempre será concluyente, por lo que el asegurador no puede descansar únicamente en su aplicación. En fin, la aplicación y efecto probatorio de dicha presunción deberá determinarse caso a caso.

IV

Nos resta determinar si fue correcto imponerle a GA Life el pago de horarios por temeridad.

La Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(d), dispone que, "[e]n caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que correspondan a tal conducta."

Se entiende que una parte ha sido temeraria cuando ésta ha obligado a la otra u otras partes a incurrir en gastos innecesarios al interponer pleitos frívolos, o alargar innecesariamente aquellos ya presentados ante la consideración de los tribunales, o que provoque que incurra o incurran en gestiones evitables.

*Jarra Const. v. Axxis Corp.*, res. el 30 de noviembre de 2001, 155 D.P.R. __, 2001 T.S.P.R. 162, 2001 J.T.S. 167; *Rivera v. Tiendas Pitusa, Inc.*, res. el 28 de junio 1999, 148 D.P.R. __, 99 T.S.P.R. 103, 99 J.T.S. 107; *Oliveras, Inc. v. Universal Ins. Co.*, 141 D.P.R. 900 (1996); *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990); *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713 (1987). El propósito de la imposición de honorarios por temeridad "es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito." *Rivera v. Tiendas Pitusa, Inc.*, supra.

Analizando el caso en su totalidad, entendemos que GA Life fue temeraria en la tramitación de las cuestiones planteadas. Su temeridad quedó manifiesta al sostener que la cláusula excluía el accidente sin ofrecer prueba que demostrara la relación causal, y sostener que dicho elemento no era necesario establecerlo en casos como el de autos. Máxime cuando GA Life fue quien redactó el contrato de póliza y condicionó la cláusula de exclusión concernida.

Además, prueba de ello es su infundada insistencia al alegar que al momento del accidente el asegurado tenía un contenido de más de 0.20% de alcohol en su sangre. Una lectura del Informe de Toxicología y de la carta explicativa del Instituto de Ciencias Forenses demuestra que, al momento del accidente, el asegurado tenía 0.09% de concentración de alcohol en su sangre. Sin embargo, de manera obstinada, GA Life se empeñó en su alegación sin prueba fehaciente que la apoyara.

V

Por las razones que anteceden, revocamos el dictamen del Tribunal de Circuito de Apelaciones y devolvemos el caso de autos al Tribunal de Primera Instancia para que continúe los procedimientos conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Domínguez Vargas

    Recurrida

      v.                          CC-2001-550        Certiorari

**Great American Life
Assurance Company of
Puerto Rico, Inc. Peticionaria**

**SENTENCIA**

**San Juan, Puerto Rico a 12 de julio de 2002.**

      **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se revoca el dictamen del Tribunal de Circuito de Apelaciones y se devuelve el caso de autos al Tribunal de Primera Instancia para que continúe los procedimientos conforme a lo aquí resuelto.**

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

                             Patricia Otón Olivieri
                              Secretaria del Tribunal Supremo