# 2007 DTA 108

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE HUMACAO
PANEL V**

RICO CHECK CASHING, INC.
Demandante-Apelante

v.

SHIRLEY RUIZ REYES
Demandada-Apelada

Núm. KLAN-07-00830

· San Juan, Puerto Rico, a 7 de septiembre de 2007

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Salas Soler y la Juez Velázquez Cajigas

Salas Soler, Juez Ponente

[black redaction bars]

## TEXTO COMPLETO DE LA SENTENCIA

El apelante, RICO CHECK CASHING, (RICO CHECK) solicitó la revisión de la Sentencia emitida por el Honorable Tribunal de Primera Instancia, Centro Judicial de Humacao (TPI) el 12 de marzo de 2007, notificada y archivada en autos el 20 de marzo de 2007. Mediante dicho dictamen, el TPI desestimó con perjuicio la Demanda de epígrafe y la Reconvención a solicitud de las partes. Además, le impuso a la parte demandante $5,000 en concepto de honorarios de abogado que constituye el principal motivo de esta Apelación.

El 4 de abril de 2007, se solicitó Reconsideración por la parte apelante. Luego, mediante Resolución el 14 de mayo de 2007, notificada y archivada en autos el 17 de mayo de 2007, se declaró *"NO HA LUGAR"* la Moción de Reconsideración.

### I

La demandada, la Sra. Shirley Ruiz Reyes (Sra. Ruiz), trabajó para RICO CHECK CASHING por tres años consecutivos. Ella y el Presidente de RICO CHECK CASHING estuvieron litigando varias causas de acción civiles entre sí por distintos motivos luego de que ésta cesara sus funciones en la compañía.

El 22 de septiembre de 2003, la Sra. Ruiz presentó una querella contra el patrono en el Departamento del Trabajo reclamando horas extras y período de tomar alimentos. De igual modo, solicitó vacaciones acumuladas y no pagadas que alegadamente le adeudaba el Presidente de RICO CHECK CASHING. Tales cantidades le fueron reclamadas al patrono por el Departamento del Trabajo y Recursos Humanos en representación de la empleada en el TPI de Humacao en un caso que finalizó con la Sentencia del 14 de marzo de 2005. En ella se determinó que la parte demandante en ese caso le adeudaba a la parte demandada la cantidad de $10,724.84.

La parte demandada alega que la presente causa de acción se radicó como castigo u hostigamiento a la parte demandada conforme a la querella allí radicada.

En la Demanda de epígrafe, el patrono alegó que la Sra. Ruiz comenzó a tener un patrón de actuaciones delictivas y fraudulentas en contra de su patrono y los asiduos clientes del local, al alterar y endosar cheques y giros para apoderarse del dinero en efectivo de los cheques allí recibidos. El demandante estimó que dichas apropiaciones alcanzaron a los $22,000 dólares por cheques que nunca llegaron a su destino. Así pues, la parte demandante solicitó Daños y Perjuicios por entender que las acciones de la Sra. Ruiz afectaron el buen nombre y confianza de la institución.

La Demanda se presentó el 24 de noviembre de 2003 y el Tribunal sometió los emplazamientos el 3 de diciembre de 2003. Luego de ello, el Lcdo. Máximo Molina, (Lcdo. Molina) representante de la parte demandada, solicitó una Producción de Documentos y notificó la premura de los mismos, ya que era necesaria su producción para poder comenzar con los preparativos de la Conferencia con Antelación al Juicio. La misma estaba señalada para el 9 de agosto de 2005, y debía someterse el informe entre las partes para el 22 de julio de 2005.

El 9 de agosto de 2005, no se pudo celebrar la Conferencia con Antelación al Juicio, ya que no compareció la representación legal de la parte demandante, el Lcdo. Luis Rivera Medina (Lcdo. Rivera). La Minuta de dicho día expresa que con motivo del incumplimiento del Lcdo. Rivera de descubrir o presentar los documentos que le ordenara el tribunal a la otra parte, se le impondría una sanción de $100 a favor de la Sra. Ruiz. (Véase Páginas 236-237 del Apéndice.) Además, se le impuso ese mismo día otra sanción de $100 por no haber propiciado la preparación del informe preliminar entre abogados a pesar de que el Tribunal lo ordenó. También se le requirió que mostrara causa por la cual no se le debía sancionar por no haberse presentado ese día.

Luego, se cambió la Conferencia con Antelación a Juicio para el 14 de marzo de 2006. La representación legal de la parte demandante informó al TPI que se podría presentar en la tarde y se le esperó por varias horas, una vez llegó, informó que había confundido las fechas y que necesitaba una posposición. Por tal razón, se pospuso para el 27 de marzo de 2006, y el TPI ordenó que el informe conjunto se entregara para el 6 de abril de 2006. Además, se informó que todavía a esa fecha no se había hecho el descubrimiento de prueba solicitado por la parte demandada.

El Tribunal ordenó que ambos representantes se reunieran en la oficina del Lcdo. Rivera para que pudieran comenzar el informe y poder cumplir con la Conferencia con Antelación al Juicio para el 6 de septiembre de 2006. El representante de la parte demandante nunca se presentó y a llamadas de la otra parte informó que no podía llegar. De este modo, nunca se pudo concretar la reunión, y conforme a ello, el día que estaba pautada la Conferencia con Antelación al Juicio se presentó únicamente la representación legal de la parte demandada.

Finalmente, el TPI pautó el Juicio para el 28 de noviembre de 2006 ordenando que se presentara el informe entre las partes para el 1 de noviembre de 2006. (Véase página 88 y 89 de la Apelación) Conforme a ello, el 1 de noviembre de 2006, la parte demandada presentó individualmente el informe de Conferencia con Antelación al Juicio y explicó la imposibilidad de reunirse con la otra parte. Ese día tampoco compareció la representación de la parte demandante, y nunca llegó a presentar su parte del informe.

Así pues, el 27 de noviembre de 2006, el **día antes del juicio**, la parte demandante, a través de su representante Lcdo. Rivera, presentó una Moción de Desistimiento en la que alegó que el Presidente de RICO CHECK CASHING había sido víctima de un asalto el 14 de septiembre de 2006 y eso lo había dejado en un estado anímico de tensión que no le permitiría testificar. Dicha Moción no se le notificó a la parte demandada con antelación y debido a ello el Lcdo. Molina se presentó ese día con toda la prueba requerida para presentar su caso; no obstante, el Lcdo. Rivera no se presentó a la vista en su fondo.

Ese día, el TPI le informó de la solicitud de desistimiento y tras consultar con su clienta el Lcdo. Molina solicitó la desestimación de la Reconvención y la imposición de Honorarios de Abogado a la parte demandante. Debido a ello, el TPI le solicitó que detallara mediante moción su petición sobre la imposición de honorarios, lo cual el Lcdo. Molina procedió a realizar.

El 1 de marzo de 2007, la parte demandada presentó "*Moción en Cumplimiento de Orden del 31 de enero de 2007 y Solicitud de Imposición de Honorarios de Abogado a la Parte Demandante*". Allí, desglosó las gestiones profesionales de los abogados de la parte demandada y sugirió $5,000 en concepto de honorarios abogado. Luego de analizada la Moción anterior y los autos del caso, el TPI consideró justificada la petición de la parte demandada e impuso los de honorarios de abogado.

Inconforme con la Sentencia, el 18 de junio de 2007, RICO CHECK CASHING presentó el recurso de apelación de epígrafe en el que expone que el TPI incidió en el siguiente error:

"*PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER EL PAGO DE HONORARIOS DE ABOGADO SIN QUE MEDIARA UNA DETERMINACIÓN DE TEMERIDAD.*"

Así pues, argumentó que el desistimiento de la parte fue únicamente por razones personales y que la economía de la empresa ameritaba reducir costos por lo cual aún en el caso de recibir una Sentencia a su favor no sabrían cuan rápido podrían cobrarla y prefirió desistir de la acción.

El 31 de julio de 2007, se presentó la Oposición a la Apelación en la que se sostuvo que el TPI estaba justificado al imponer honorarios de abogado, ya que la conducta de la parte demandante fue temeraria al dilatar los procesos e intentar castigar a la Sra. Ruiz por reclamar sus derechos en el Departamento del Trabajo.

## II

La Regla 44.1 (d) de las de Procedimiento Civil, 32 LPRA Ap. III, R. 44.1(d), autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado hubiera procedido con temeridad. Dicho precepto reza de la siguiente manera:

*"En caso en que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta."*

El concepto *"temeridad"* no está expresamente definido por la Regla 44.1(d), *supra*. Sobre el particular, el Tribunal Supremo de Puerto Rico ha expresado que la acción que amerita la imposición de este tipo de condena es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. *Domínguez v. Great American Life Assurance Co.*, 157 DPR 690, 706 (2002); *Jarra Const. v. Axxis Corp.*, 155 DPR 764, 779-780 (2001).

El Tribunal Supremo ha determinado que los siguientes actos, entre otros, constituyen temeridad: (1) si el demandado contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente; (2) si se defiende injustificadamente de la acción; (3) si la parte demandada no admite francamente su responsabilidad para limitar la controversia a la fijación de la cuantía a ser concedida; (4) si se arriesgó a litigar un caso del que se desprendía *prima facie* la negligencia; y por último, (5) si niega un hecho que le consta que es cierto. *Fernández v. San Juan Cement, Co.*, 118 DPR 713, 718-719 (1987).

El propósito de imponer honorarios de abogado por temeridad, es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Domínguez v. Great American Life Assurance Co., supra*, a la página 706.

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que la determinación de temeridad de los litigantes descansa en la sana discreción del tribunal sentenciador. *Fernández v. San Juan Cement Co., Inc., supra.*

También, el Tribunal Supremo ha manifestado que *"la condena en honorarios de abogado es imperativa cuando el tribunal sentenciador concluye que una parte ha sido temeraria, y además, que en ausencia de una conclusión expresa a tales efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada..."*. *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999).

En vista de que el TPI goza de amplia discreción en este tipo de determinaciones, una partida de honorarios de abogado concedida no se variará en apelación a menos que la misma sea **excesiva, exigua o constituya el ya mencionado abuso de discreción**. *Ramírez v. Club Calas de Palmas*, 123 DPR 339(1989).

Al cuantificar los honorarios de abogado por temeridad, los tribunales pueden tomar en consideración factores

tales como la naturaleza del litigio, las cuestiones de derecho envueltas en el caso, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse y la habilidad y reputación de los abogados en el caso. El factor determinante en dicha determinación, sin embargo, habrá de ser el grado o intensidad de la conducta temeraria o frívola. *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 738-739 (1990).

En el presente caso, RICO CHECK CASHING, parte demandante, incurrió en una serie de dilaciones y asumió una actitud de abandono al trámite que no debe ser aceptada. Además, el hecho de no avisar a la otra parte de su desistimiento con anticipación y que dejara que la misma se preparara para el día de la vista en su fondo, fue parte de la continua desidia que presentó la parte demandante. El prepararse para un juicio implica una serie de gastos y costos que no debe quedar al olvido y por tal razón entendemos que examinado todos los hechos expresados anteriormente, y otras acciones que surgen del expediente, la sanción punitiva de los honorarios no debe eliminarse, ya que el TPI, bajo su amplía discreción, quedó convencido de que la parte demandante fue temeraria.

No obstante, entendemos que la cantidad impuesta es excesiva y que el TPI se excedió en su discreción, por lo que este Tribunal variará la determinación del tribunal sentenciador, en lo que a este asunto se refiere a $2,500 dólares.

Por otra parte, el Tribunal Supremo ha señalado que la cuantía no tiene que coincidir matemáticamente con el valor real de los servicios prestados o pagados, sino con aquella suma que, en consideración al grado de temeridad y demás circunstancias, el tribunal concluya que representa el valor de esos servicios. *Asociación de Condóminos v. Trelles Reyes*, 120 DPR 574 (1988).

En Puerto Rico, los honorarios de abogado se estiman como una sanción punitiva por temeridad, por lo que no deben estar justificados por hora como lo amerita la jurisdicción federal al manejarlos de forma retribuyente.

Debido a ello, entendemos que imponerle a la parte demandante la cantidad de $5,000 es excesiva; no obstante, no podemos desvirtuar la determinación del TPI de imponer sanciones cuando evidentemente la actitud y conducta de la parte demandante dilató los procedimientos. No podemos adscribirnos a la postura de la parte demandada en cuanto a que el motivo de esta acción fuera uno meramente revanchista; sin embargo, sí entendemos que la poca diligencia presentada por la representación legal de la parte demandante constituye temeridad según ha expresado nuestro Tribunal Supremo y conforme estimara el TPI.

En síntesis, el peticionario alega que no procedía la imposición de honorarios de abogado porque no hubo una determinación de temeridad en la sentencia. No le asiste la razón por estar implícita en la determinación y sus actos. Además, el hecho de haber prolongado innecesariamente el litigio con sus ausencias o excusas y producir la necesidad de que la otra parte incurriera en gestiones que se pudieron haber evitado, amerita tal sanción.

### Dictamen

Con estos antecedentes, se modifica la sentencia apelada para reducir a $2,500 los Honorarios de Abogado y, así modificada, se confirma.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones