*672 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, Car Auto, Inc. (en adelante, “el recurrente”), en el interés de obtener la revocación de una resolución emitida por el Departamento de Asuntos del Consumidor (en adelante, D.A. C.O.). Mediante esta determinación se declaró ha lugar una querella instada por la Sra. Carmen Trujillo Cabrera (en adelante, “la recurrida”) en contra del recurrente, Eurolease y Trébol Motor Distributors Corp. En síntesis, D.A.C.O. decretó la resolución del contrato de compraventa de un vehículo de motor y ordenó la devolución de las prestaciones entre las partes, de modo que el recurrente y Eurolease pagaran solidariamente diez mil seiscientos ochenta y un dólares con sesenta y seis centavos ($10,681.66) por los pagos mensuales realizados por la recurrida. De la misma forma, D.A.C.O. les impuso el pago de dos mil dólares ($2,000) por los daños y perjuicios sufridos por la recurrida. Por último, D.A.C.O. le requirió a Car Auto, Inc. el pago de mil dólares ($1,000) a la recurrida en honorarios de abogados por temeridad. Respecto a Trébol Motors Distributors Corp., D.A.C.O. concluyó que éste no posee responsabilidad alguna por tratarse de un caso de dolo en la contratación; en consecuencia, desestimó la querella en su contra.
Oportunamente, el recurrente presentó ante nos su escrito de revisión administrativa en el que le imputó al D.A.C.O la comisión de cuatro errores. Adujo que erró el D.A.C.O.: (1) “al omitir hechos fundamentales que fueron objeto de prueba; tales como que el auto fue usado por la parte querellante en pistas de carreras, que la parte querellante alteró y modificó el auto para que corriera más”', (2) “al concluir que Car Auto cometió dolo *673 al ocultarle la recurrida al momento de la venta que el auto no tenia garantía del fabricante"; (3) “al declarar temerario a Car Auto”', (4) “al anotarle la rebeldía a Car Auto, por su justificada incomparecencia a la continuación de la vista y prohibir de esa manera que Car Auto terminara con la presentación de su prueba ”.
Examinado el escrito del recurrente y el derecho aplicable a la controversia ante nosotros, determinamos no erró el D.A.C.O al imputarle responsabilidad al recurrente. Siendo ello así, confirmamos la resolución revisada.
I
El 12 de marzo de 2008, este Foro le concedió al recurrente ■ varios términos para cumplir con la transcripción de los procedimientos ante el D.A.C.O. El 23 de mayo de 2008, se le concedió al recurrente una prórroga para culminar el proceso de transcripción. No obstante, ante el incumplimiento del recurrente, el 19 de septiembre del 2008, se dio por sometido el recurso sin el beneficio de la transcripción. En virtud de lo anterior, esbozamos a continuación las incidencias procesales y circunstancias fácticas de mayor relevancia a la controversia que nos ocupa, según se desprenden de las determinaciones de hechos emitidas por el D.A.C.O.
“i. El 8 de diciembre de 2005, la querellante, Sra. Carmen N. Trujillo adquirió, para su hijo, en la firma co querellada, Car Auto, Inc. un vehículo Marca Subaru modelo Impreza del 2004 por el precio convenido de veintiún mil quinientos dólares ($21,500.00) cantidad que fue financiada por la co querellada, EuroLease.

2. La firma co querellada, Car Auto, Inc., le informó a la querellante al momento de la compra del vehículo que éste tenía garantía por el fabricante, ya que tenía veintinueve mil veinte (29,020) millas recorridas. En la Orden de Compra se hizo constar que el vehículo tenía garantía del fabricante, hecho que era sumamente importante para la querellante, ya que el vehículo lo había adquirido para su hijo.

3. El 16 de diciembre de 2005, mientras el hijo de la querellante, Sr. Luis Yamil Hernández conducía el vehículo, el mismo se le apagó en el expreso.

4. El esposo de la querellante, Sr. José Luis Hernández, se comunicó con la firma co querellada, Car Auto, Inc. e informó lo ocurrido y procedió a recoger el vehículo en grúa y lo llevó a sus facilidades.

5. El 19 de diciembre de 2005, Car Auto llevó el vehículo a la firma de la co querellada, Trébol Motors Distributors Corp., para que le diera servicio en garantía.

6. El 23 de diciembre de 2005, la co querellada, Trébol Motor Distributors Corp., le informó a la co querellada, Car Auto, Inc., que no podía honrar la garantía del fabricante porque al vehículo le faltaba el aislante del turbo, el catalítico y el aislante de la computadora, razón por la cual había perdido la garantía del fabricante en cuanto a esa área.

7. La co querellada, Car Auto, Inc., ante la denegatoria de garantía, procedió a pagar la cantidad de setecientos cincuenta y cinco dólares con sesenta y un centavos ($755.61) por la reparación que le hicieron al vehículo en la firma co-querellada, Trébol Motor Distributors Corp.

8. El vehículo le fue entregado a la querellante el 8 de enero de 2006, pero no le informaron qué trabajo le habían realizado al vehículo y tampoco le informaron que la firma co querellada, Trébol Motor Distributors Corp., había denegado la garantía.

9. El 20 de enero de 2006, la querellante llevó el vehículo a la firma co querellada, Trébol Motors Distributors Corp., para la reparación del acondicionador de aire, el cual fue reparado en garantía.

10. El 19 de marzo de 2006, el motor del vehículo se desvíelo; la querellante fue a la firma co querellada, Car 
*674
Auto, Inc. para que lo repararan en garantía.

11. La querellante se enteró el 19 de marzo de 2006 que el vehículo no tenía garantía.

12. El 18 de mayo de 2006, la querellante radicó en este Departamento la querella de epígrafe, mediante la cual solicitaba la cancelación del contrato y/o lo que procediera en derecho.

13. El 12 de junio de 2007, este Departamento, por conducto del Técnico Automotriz, Sr. Luis E. Sold Giralt, realizó una inspección del vehículo objeto de la querella radicada.

14. Para el 12 de junio de 2007, el vehículo tenía treinta mil trescientas cincuenta y siete millas corridas.

15. En el informe de inspección notificado a las partes el 14 de junio de 2007, se hace constar que el vehículo se encontraba en la firma querellada, inoperante. Al encender el mismo, éste presentó un ruido interno fuerte en el motor. El aceite de motor se encontraba sucio y con poca viscosidad.

16. Según la opinión del perito, el ruido que presentó el motor era a consecuencia de que el mismo se desvíelo. La condición que presentaba el aceite de motor era ocasionada, por un mantenimiento inadecuado o un aceite de pobre calidad.

17. El Sr. Héctor Zorilla, testigo de la firma co querellada, Trébol Motors Distributors Corp., testificó que a este vehículo debía cambiársele el aceite de motor cada tres (3) meses o cada cuatro mil (4,000) millas.

18. El vehículo objeto de la presente querella fue llevado a la firma co querellada, Trébol Motors Distributors Corp., en seis (6) ocasiones a saber:

1. El 7 de agosto de 2003 para reparación del “cluche” roto el cual fue reparado, pero no bajo garantía.

2. El 27 de agosto de 2003 para cambio de aceite y filtro.

3. El 13 de noviembre de 2004 por un “recall” del “cruise control” y cambio de aceite y filtro.

4. El 21 de noviembre de 2005 por problemas con la luz del “air bag” por cablería rota.

5. El 24 de diciembre de 2005 para la reparación que pagó la firma co querellada Car Auto, Inc., ya que el vehículo había perdido la garantía.

6. El 10 de enero de 2006 para la reparación del acondicionador de aire el cual fue reparado en garantía.

19. La querellante adquirió el vehículo objeto de la querella de epígrafe para su hijo quien solamente lo pudo utilizar por una cuantas semanas, ya que se vio obligado a llevarlo a reparar en varias ocasiones por los problemas que presentó.

20. La querellante continuó pagando las mensualidades ante el temor de que su crédito se afectara, lo que le ha presentado una serie de contratiempos e inconvenientes con su hijo y esposo.

21. La firma co querellada, Car Auto, Inc., a pesar de tener conocimiento de que al vehículo no le fue honrada la garantía porque le faltaba el aislante del turbo, el catalítico y el aislante de la computadora, y que al mismo no se le había dado el mantenimiento recomendado por el fabricante, optó por litigar el caso.

*675 El 29 de enero de 2008, Eurolease solicitó la reconsideración de la determinación del D.A.C.O. El 30 de enero de 2008, archivada en autos el 31 de enero del mismo año, el D.A.C.O. emitió una resolución en reconsideración en la que declaró no ha lugar la solicitud de reconsideración de Eurolease.
II
Los tribunales poseemos el deber de fiscalizar las decisiones de las agencias administrativas, para asegurar que desempeñen cabalmente sus funciones, y para que el País no pierda la fe en sus instituciones de gobierno. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 700 (2000); Empresas Ferrer, Inc. v. A.R.P.E., res. el 2 de octubre de 2007, 2007 J.T.S. 181.
El fin primordial de la revisión judicial de las decisiones administrativas es delimitar la discreción de los organismos administrativos para asegurar que realizan sus funciones conforme a la ley y de forma razonable. Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279 (1999).
Por lo general, las decisiones administrativas gozan de gran deferencia y respeto. Lo anterior está fundamentado en la experiencia y el conocimiento especializado que poseen estos organismos en relación a los asuntos que se les ha encomendado. Mun. de San Juan v. Junta de Planificación, res. el 18 de octubre del 2006, 2006 J.T.S. 164; Hernández v. Centro Unido, res. el 10 de agosto de 2006, 2006 J.T.S. 140; Empresas Ferrer, Inc. v. A.R.P.E., supra.
No obstante, la deferencia reconocida a las determinaciones de los organismos administrativos cede en ciertas circunstancias, por ejemplo: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) cuando actúa arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional; o (4) si la actuación administrativa lesiona derechos constitucionales fundamentales. Vázquez Cintrón v. Banco de Desarrollo Económico para Puerto Rico, res. el 9 de mayo de 2007, 2007 J.T.S. 91; Hernández v. Centro Unido, supra; Mun. de San Juan v. Junta de Planificación, supra; Empresas Ferrer, Inc. v. A.R.P.E., supra.
Sobre este particular, la Ley de Procedimiento Administrativo Uniforme (en adelante L.P.A.U.) dispone que el tribunal podrá conceder el remedio que estime apropiado si determina que el peticionario tiene derecho al mismo. Igualmente, esta disposición indica que las determinaciones de hechos de las decisiones de las agencias administrativas serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Associated Insurance Agencies, Inc. v. Comisionado de Seguros de PR, 144 D.P.R. 425 (1997).
La revisión de las determinaciones de hechos de las agencias administrativas está limitada por lo establecido en la See. 4.5 de la Ley Núm. 170, supra, que dispone lo siguiente:

“El Tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. ”

Las determinaciones de hechos formuladas por la agencia serán sostenidas siempre que estén sustentadas por evidencia sustancial que obre en el récord administrativo. Asoc. de Vecinos Tulip v. Junta de Planificación, res. en 22 de mayo de 2006, 2006 J.T.S. 146. No obstante, las conclusiones de derecho son revisables en todos sus aspectos. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar *676 libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, el Tribunal Supremo ha reiterado consistentemente antes y después de la vigencia de la Ley Núm. 170, supra, que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. Si de la totalidad del récord administrativo se sostienen las determinaciones adoptadas por el foro administrativo, los tribunales no deben sustituirlas por su propio criterio. Id.
B
El Código Civil de Puerto Rico establece que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público, 31 L.P.R.A. § 3372. “Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y ala ley.” 31 L.P.R.A. § 3375.
Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Art. 1206, Código Civil, 31 L.P.R.A. see. 3371. Amador v. Conc. Igl. Univ. de Jesucristo, 150 D.P.R. 571 (2000). Una vez concurren las condiciones esenciales para la validez de los contratos, éstos son obligatorios. Art. 1230 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3451. El consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Art. 1214 del Código Civil, 31 L.P.R.A. see. 3401; Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 521 (1982).
Una de las causas por las cuales puede declarase nulo un contrato surge cuando ha existido dolo en la contratación. Lo anterior está sustentado en que siendo el consentimiento uno de los elementos esenciales para la existencia de un contrato, éste debe prestarse libre de vicios, o de lo contrario se invalida la eficacia del contrato. Existe dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera celebrado, 31 L.P.R.A see. 3408. Además, constituye dolo el callar sobre una circunstancia importante respecto al objeto del contrato. Márquez v. Torres Campos, 111 D.P.R. 854 (1982).
El dolo que produce la nulidad del contrato es aquel denominado dolo grave, no se trata del dolo meramente incidental y no pudo haber sido empleado por las dos partes contratantes. El dolo grave es el que causa y lleva a celebrar el contrato, de modo tal que sin él, no se hubiera otorgado el mismo. Colón v. Promo Motor Imports, Inc., 144 D.P.R. 659 (1997).
El Art. 1255 del Código Civil, 31 L.P.R.A see. 3514 dispone que una vez se declare la nulidad de una obligación, los contratantes deben restituirse recíprocamente las cosas que hubiesen sido materia del contrato, con sus frutos, y el precio con los intereses. Por ende, declarada la nulidad del contrato, las partes deberán devolver a su estado anterior las cosas, mediante la restitución de las prestaciones objeto del contrato, salvo cuando la nulidad se deba a causa torpe o ilícita, en cuyo caso prevalece como criterio el de culpa o torpeza atribuible a las partes. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172 (1985).
C
Es norma reiterada que la imposición de honorarios de abogado sólo procede cuando una parte ha actuado con temeridad o frivolidad. Al respecto, el Tribunal Supremo ha resuelto que el propósito de la determinación de temeridad y la eventual imposición de honorarios de abogado es "penalizar al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". Santiago v. Sup. Grande, supra, a la pág. 11; Oficina de Ética Gubernamental v. Román González, 159 D.P.R. 401 (2003), a la pág. 418; Domínguez Vargas v. Great American Life Assurance Company of Puerto Rico, Inc., 157 D.P.R. 690 (2002).
*677 Existirá temeridad cuando: (1) en la contestación a la demanda se niegue responsabilidad, pero ésta se acepte posteriormente; (2) la parte demandada se defienda injustificadamente de la acción; (3) se crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante, en lugar de admitir responsabilidad y limitar la controversia a la fijación de la cantidad reclamada; (4) el demandado se arriesgue a litigar un caso del que se surja a todas luces su responsabilidad, y (5) cuando se niegue un hecho cuya certeza le consta a quien hace la alegación. Oficina de Ética Gubernamental v. Román González, supra; Blás v. Hosp. Guadalupe, 146 D.P.R. 267, 336 (1998); Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718-719 (1987). El grado o intensidad de la conducta temeraria o frívola es el factor determinante para fijar la cuantía de los honorarios de abogado. Oficina de Etica Gubernamental v. Román González, supra.
La conducta temeraria que acarrea la imposición de honorarios de abogado, se refiere a una "actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia." Santiago v. Sup. Grande, supra, a la pág. 12.; Puerto Rico Oil Company, Inc. v. Dayco Products, Inc., res. el 6 de abril de 2005, 2005 J.T.S. 47, a la pág. 12; H. Sánchez, Rebelde Sin Costas, 4(2) Boletín Judicial 14 (1982).
De otra parte, la determinación de si una parte ha actuado o no con temeridad descansa en la sana discreción del tribunal. Por lo cual, los tribunales revisores intervendrán, únicamente, cuando surja de tal actuación un claro abuso de discreción. Santiago v. Sup. Grande, supra; Puerto Rico Oil Company, Inc. v. Dayco Products, Inc., supra, a la pág. 12. Reiteradamente hemos resuelto que no existe temeridad cuando lo que se plantea ante el tribunal de instancia son planteamientos complejos y novedosos que no han sido resueltos en nuestra jurisdicción. Tampoco existe temeridad en aquellos casos en que el litigante actúa de acuerdo a la apreciación errónea de una cuestión de derecho y no hay precedentes establecidos sobre la cuestión, Santiago v. Sup. Grande, supra', Cabanillas v. Gelpí, 65 D.P.R. 945, 949 (1946), o cuando existe alguna desavenencia honesta en cuanto a quién favorece el derecho aplicable a los hechos del caso. Santiago v. Sup. Grande, supra, a la pág. 12; Cándido Oliveras, Inc. v. Universal Ins. Co., 141 D.P.R. 900, 936 (1996); Elba A.B.M. v. U.P.R., supra; Santos Bermúdez v. Texaco P.R., Inc., 123 D.P.R. 351 (1989); Santaella Negrón v. Licari, 83 D.P.R. 887, 903-904 (1961).
III
En el caso ante nos, no tuvimos el beneficio de evaluar la transcripción de los procedimientos ante el D.A. C.O. Nuestra decisión está fundamentada en las determinaciones de hechos emitidas por la agencia, en el escrito de revisión del recurrente y en el derecho aplicable a la controversia ante nuestra consideración. Expuesto lo anterior, concluimos que no erró el D.A.C.O. al imputarle responsabilidad al recurrente por el alegado dolo que provocó la nulidad del contrato de compraventa y que sirvió de base para el posterior contrato de arrendamiento financiero. De las determinaciones de hechos realizadas por el D.A.C.O., se desprende que el recurrente fue quien alegadamente expresó a la recurrida que el vehículo de motor aún poseía la garantía del fabricante porque tenía veintinueve mil veinte (29,020) millas recorridas, manifestación que provocó el consentimiento viciado de la recurrida para la realización del contrato.
Respecto a los restantes errores alegados por el recurrente, es preciso reiterar que éste no nos puso en condiciones para revisar la apreciación de la prueba que hizo el D.A.C.O. Específicamente, no podemos determinar si erró la agencia al omitir hechos alegadamente fundamentales que fueron parte de la prueba presentada por el recurrente. Tampoco podemos analizar si la agencia obró arbitraria o ilegalmente al imponer honorarios de abogado por temeridad y al anotarle la rebeldía al recurrente.
IV
Por los fundamentos antes expuestos, se confirma la resolución del D.A.C.O. en cuanto a la responsabilidad del recurrente, Car Auto, Inc.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones