*973 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos el Sr. Justo Muñoz Blanco (el Sr. Muñoz o el peticionario) y nos solicita que revoquemos la Resolución y Orden emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (el TPI) el 15 de julio de 2009 y notificada el 21 de igual mes y año. Por medio de dicho dictamen, el TPI ordenó al peticionario pagar a la Sra. Jackeline Rivera Morales (la Sra. Rivera o la recurrida) la suma de $27,652.08, por concepto del retroactivo adeudado por pensión alimenticia para los hijos menores de las partes; $2,500 en honorarios de abogado como parte de los alimentos y la suma de $1,500 en honorarios de abogado por temeridad. Por último, el TPI prohibió al peticionario utilizar cierta evidencia para impugnar lo adeudado por pensión alimenticia que no notificó a la recurrida acorde con la orden dictada el 22 de mayo de 2009.
Atendido el recurso y el derecho aplicable, resolvemos expedir el auto de certiorari solicitado y modificar el dictamen recurrido en lo atinente al pago del retroactivo.
I
El peticionario y la recurrida sostuvieron una relación consensual por alrededor de 18 años durante la cual procrearon dos hijos quienes, al presente, cuentan con 14 y 11 años de edad. Los menores están bajo la custodia de la madre.
El 22 de junio de 2005, la Sra. Rivera presentó una demanda en contra del peticionario en solicitud de alimentos para los menores. Durante la vista ante la Examinadora de Pensión Alimenticias (la EPA), las partes estipularon una pensión provisional de $1,250 mensuales, retroactiva al 1ro de enero de 2006, la que, en Resolución dictada el 20 de enero de 2006, el TPI aprobó. En el correspondiente Informe de la EPA de 10 de enero de 2006 [1] se expresó que no existía balance pendiente de pago por concepto de pensión alimenticia retroactiva.
Así las cosas, el 6 y 7 de marzo de 2008 se celebró la vista para fijar la pensión permanente. Tras los procedimientos de rigor, la EPA emitió su Informe el 13 de mayo de 2008, el que el TPI acogió en la Sentencia dictada el 28 de mayo de 2008. Por medio de la misma, le fijó al peticionario el pago de una pensión final de $3,128.00 mensuales, a base de $1,564 quincenales, retroactiva al 1ro de octubre de 2005. Además, determinó que el peticionario tenía una deuda retroactiva por alimentos ascendente a $27,678.07, por lo que le concedió 30 días para que hiciera una oferta para el pago de la misma. [2] Oportunamente, el peticionario solicitó al TPI que reconsiderara la aludida Sentencia.
Por su parte, en moción fechada el 4 de junio de 2008, la recurrida solicitó al TPI que le impusiera al peticionario el pago de $5,000 en honorarios de abogado, de conformidad con el Artículo 22 de la Ley de *974 Sustento de Menores, (Ley de ASUME), 8 L.P.R.A. see. 521. Por otro lado, en otro escrito titulado Memorando de Costas y Honorarios de fecha 10 de junio de 2008, la Sra. Rivera reclamó nuevamente el pago de honorarios de abogado ascendentes a $5,000 al tenor del Artículo 22 de la Ley de ASUME por alegadamente haber comparecido al TPI en siete (7) ocasiones y que le impusiera al peticionario el pago de otros $5,000 acorde con la Regla 44.1(d) de Procedimiento Civil, por la temeridad alegadamente desplegada por éste en la litigación. Por último, solicitó el pago de $340 por las costas incurridas en el pleito.
En respuesta a tales mociones de ambas partes, en orden dictada el 18 de junio de 2008, el TPI las refirió a la EPA, quien emitió un Informe el 22 de julio de 2008.
Así, en Resolución emitida 4 de agosto de 2008, el TPI acogió la recomendación de la EPA en el aludido Informe e impuso al peticionario el pago de $2,500 por concepto de honorarios de abogado de conformidad con el Artículo 22 de la Ley de ASUME, 8 L.P.R.A. see. 521, a ser satisfechos en 30 días.
Posteriormente, en otra extensa orden emitida el 18 de agosto de 2008 en la que trató varios asuntos, el TPI le impuso al peticionario $1,000 en honorarios de abogado y $340.00 por las costas, a ser pagadas en 90 días y dejó sin efecto la previa orden de 13 de agosto de 2008. [3] Finalmente, denegó la moción de reconsideración presentada por el Sr. Muñoz.
Por otro lado, en respuesta a ciertas solicitudes de desacato presentadas por la recurrida, el TPI le concedió al Sr. Muñoz el plazo de 20 días para que mostrara evidencia de que el pago de la pensión alimenticia se encontraba al día. Por último, le otorgó 10 días al peticionario para confirmar cómo y cuándo comenzaría a pagar el retroactivo adeudado. [4]
En tanto, el 30 de enero de 2009 un Panel Hermano de este Tribunal emitió una Sentencia en el recurso KLAN-2008-01386 en el que el Sr. Muñoz impugnó la Sentencia emitida el 28 de mayo de 2008 que le impuso la pensión permanente. El tribunal ordenó al TPI que modificara el cálculo de la pensión alimenticia para que la misma fuera determinada primeramente a base del ingreso del peticionario hasta la fecha de su retiro gubernamental y de ahí en adelante, a base de los ingresos recibidos como retirado.
Atendido nuestro mandato, el 13 de marzo de 2009, la EPA rindió su Informe en el cual recomendó que se le fijara al peticionario el pago de una pensión alimenticia mensual de $3,056, a ser pagada a base de $1,528.00 semanales, retroactiva al 1ro de octubre de 2005 y que fuese consignada en ASUME a partir del 1ro de junio de 2008. Por último, estableció la deuda del retroactivo en $27,652.08.
De este modo, en la Resolución dictada el 2 de abril de 2009 y notificada el 13 de abril de 2009, el TPI acogió el aludido Informe y le fijó al Sr. Muñoz la pensión final en $3,056 mensuales, o sea, $1,528 quincenales. Respecto al retroactivo, le concedió 15 días, a partir de la notificación de la Resolución, para que informara su oferta de pago.
El peticionario alega en su Petición de Certiorari que ante las repetidas mociones presentadas por la recurrida para que el Sr. Muñoz pagara la pensión impuesta y el retroactivo, el TPI señaló varias vistas los días 24 de febrero, 6 de abril, 22 de mayo y 19 de junio de 2009, las cuales alegadamente no pudieron ser celebradas. Aduce también que solicitó vista para presentar prueba sobre los créditos a ser aplicados a la deuda de retroactivo correspondientes a las aportaciones hechas por él a la pensión y el pago de ciertos gastos de los menores. [5] Aclara que a pesar de que tales vistas no se celebraron, él asistió a los señalamientos, salvo el de 19 de junio de 2009, por razón de la agonía y posterior fallecimiento de su padre. Por otro lado, explica que los demás señalamientos se dejaron sin efecto debido a que varios de los jueces que intervinieron en el caso no tuvieron la oportunidad de revisar el voluminoso expediente del litigio. Finalmente, expone que el último señalamiento fue dejado sin efecto motu proprio por el TPI en una orden notificada el 8 de julio de 2009 en la *975 que le requirió a la abogada de la recurrida que sometiera un Proyecto y Resolución de Orden para resolver las controversias pendientes. [6]
Así las cosas, el 15 de julio de 2009, el TPI emitió la Resolución y Orden recurrida, la cual fue notificada el 21 de julio de 2009. En ésta, ordenó al peticionario a pagar la suma de $27,652.08 por concepto del retroactivo adeudado a junio de 2008, dentro del plazo perentorio de 5 días, so pena de ordenar su arresto. Además, le ordenó pagar, en el término de 5 días, los honorarios de $2,500 impuestos al amparo del Artículo 22 de la Ley de ASUME desde agosto de 2008. Le impuso también $1,500 en honorarios por temeridad, a ser pagados en 45 días, por las vistas de desacato y comparecencias al TPI, promovidas por su incumplimiento con el pago de la pensión alimenticia y las órdenes del TPI. Por último, el TPI le prohibió utilizar cierta evidencia para impugnar lo adeudado por la pensión alimenticia que debió notificar a la recurrida conforme a la orden emitida en la vista de 22 de mayo de 2009.
Inconforme, el 20 de agosto de 2009, el Sr. Muñoz presentó el recurso de certiorari de autos en el que alega que el TPI cometió los siguientes errores:
“PRIMER ERROR: Cometió grave error el Tribunal de Primera Instancia al establecer de forma final la deuda de retroactivo sin celebrar la vista evidenciaria que había sido pautada para que el alimentante presentara la prueba de los créditos que debían considerarse contra ese retroactivo, para lo cual ya se habían señalado varias vistas que fueron suspendidas por causas justificadas, casi todas ellas atribuibles al mismo tribunal.
SEGUNDO ERROR: Erró el Tribunal de Primera Instancia y abusó de su discreción al disponer que el alimentante debe pagar $2,500.00 de honorarios de abogado, en adición a los $1,000.00 ya pagados por éste, a pesar de que ya el tribunal había hecho una determinación de modificar la cuantía que había recomendado la Examinadora a $1,000.00, y al imponer otra cantidad adicional de $1,500.00 por las comparecencias habidas en relación a las últimas vistas señaladas, todo lo cual asciende a $5,000.00, suma que es excesiva e injustificada.
TERCER ERROR: Erró el Tribunal de Primera Instancia al adoptar un proyecto de Resolución sometido por la parte alimentista claramente contradictorio en sus disposiciones y evidentemente favorecedor de todo lo solicitado por dicha parte, aunque algunas de sus disposiciones son improcedentes.”
Luego de ciertos incidentes procesales, concedimos plazo a la recurrida para que presentara su alegato, lo cual cumplió el 26 de octubre de 2009.
Con el beneficio de los escritos de las partes y el examen de los documentos del apéndice, pasamos a resolver.
n
Como es sabido, la obligación de los progenitores de brindar alimentos a sus hijos menores de edad no emancipados es parte esencial del derecho a la vida consagrado en las Secciones 1 y 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. McConnell v. Palau, 161 D.P.R.734 (2004); Martínez v. Rodríguez, 160 D.P.R. 145 (2003). Esta obligación halla su base en principios universalmente reconocidos de solidaridad humana asociados al derecho natural y a imperativos de vínculos familiares. Argüello López v. Argüello García, 155 D.P.R. 62 (2001); Rodríguez Avilés v. Rodríguez Beruff, 117 D.P.R. 616, 621 (1986); Martínez v. Rivera Hernández, 116 D.P.R. 164, 168 (1985). Este deber, de estirpe constitucional, está igualmente resguardado en los Artículos 143 y 153 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 562 y 601, respectivamente. Mediante el Artículo 143 del Código Civil se establece la obligación recíproca de alimentos entre parientes. Mientras que el Art. 153 impone a los padres el deber de alimentar como parte de la patria potestad. Al respecto se señala que:
*976 “El padre y la madre tienen, respecto de sus hijos no enmancipados:
1. El deber de alimentarlos, tenerlos en su compañía, educarlos e instruirlos con arreglo a su fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho.
2.....”,
En Guadalupe Viera v. Morell, 115 D.P.R. 4 (1983), el Tribunal Supremo de Puerto Rico interpretó el ámbito y diferencias de estas disposiciones señalando lo siguiente:
“La obligación alimentaria que surge del Art. 143 se refiere al caso del padre o la madre de hijos no emancipados que no viven en su compañía y sobre los cuales no tiene la patria potestad, y a hijos y otros parientes, no importa su edad, que tengan necesidad de alimentos, y siempre que el alimentante cuente con recursos para proveerlos. A diferencia de la obligación bajo el ejercicio de la patria potestad, el deber de proveer alimentos bajo el articulado del Código que regula los alimentos entre parientes-142 al 151 (31 L.P.R.A. sees. 561-570)- se basa en el estado de necesidad del hijo y depende de la condición económica del padre alimentante. Se distingue, además, en que la obligación es exigible cuando se demuestra la necesidad de alimentos del hijo y son reclamados judicialmente.” Art. 147 (31 L.P.R.A. see. 566).
Tal obligación es distinguible de la impuesta por el Art. 153 del Código Civil, supra, la cual emana del ejercicio de la patria potestad. Véase, Guadalupe Viera v. Morell, supra, a las págs. 12-13.
La obligación del sustento de los hijos menores recae en ambos padres. Sin embargo, una vez roto el vínculo matrimonial, se reparte entre los padres el pago de la pensión alimentaria en cantidad proporcionada a su caudal respectivo. Artículo 145 del Código Civil, 31 L.P.R.A. see. 564; Figueroa v. Rivera, 149 D.P.R. 565, 572 (1999); López Martínez v. Yordán, 104 D.P.R. 594 (1976).
En Puerto Rico, los casos de menores están revestidos del más alto interés público. Maldonado v. Cruz, 161 D.P.R. 1, (2004). Dicho interés no es otro que el bienestar del menor. Ríos Rosario v. Vidal Ramos, 134 D.P.R. 3 (1993). Por tal razón, el Estado ha procurado que este interés esté ampliamente legislado mediante la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada por la Ley Núm. 86 de 17 de agosto de 1994, conocida como “La Ley Orgánica de la Administración para el Sustento de Menores”, en adelante, Ley para el Sustento de Menores, 8 L.P.R.A. sec. 501 et. seq.
La Ley para el Sustento de Menores consagra la política pública del Estado de crear un procedimiento expedito que permita procurar de los padres, o personas legalmente responsables, que contribuyan a la manutención y bienestar de sus hijos o dependientes mediante la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de la pensión alimentaria. McConnell Jiménez v. Palau Grajales, supra, Martínez Vázquez v. Rodríguez Laureano, supra.
Este propósito se logra mediante el nombramiento de examinadores, 8 L.P.R.A. see. 512, quienes, luego de analizar la información pertinente y escuchar la evidencia sobre las partes, formulan recomendaciones sobre las pensiones, que pueden ser acogidas o rechazadas por el Tribunal. 8 L.P.R.A. see. 517. La Ley hace mandatorio que la fijación de la pensión sea realizada considerando las Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico, 8 L.P.R.A. see. 518, Reglamento Núm. 7135 que entró en vigor el 24 de mayo de 2006, (las Guías).
Ahora bien, nuestro Tribunal Supremo ha dispuesto que la determinación de la cuantía de los alimentos corresponde al prudente arbitrio de los tribunales. Para ello debe tenerse en cuenta que haya proporción entre el estado de necesidad del alimentista y la posibilidad económica del alimentante, considerando los medios de que *977 éste disponga luego de atender su propio sostenimiento. Art. 146 del Código Civil, 31 L.P.R.A. see. 565; Chévere v. Levis, 150 D.P.R. 550 (2000); Guadalupe Viera v. Morell, supra, pág. 15.
De otro lado, resulta fundamental que al imponer la obligación de alimentos, el ingreso que le sobre al alimentante ha de ser suficiente para proporcionar la satisfacción de las necesidades de la vida al nivel mínimo aceptable para la conciencia social. En Quiles v. Cardona, 171 D.P.R._, 2007 JTS 116, el Tribunal Supremo reconoció que “...los mejores intereses de los menores no se protegen fijando una pensión que el padre alimentante no puede sufragar. Ello únicamente provocará que el padre alimentante incumpla su obligación o, peor aún, que se vea afectada su capacidad para generar ingresos ante la encarcelación que dicho incumplimiento conllevará”. Opinión, pág. 12.
Este carácter de proporcionalidad es igualmente observado por el Art. 19 de la Ley para el Sustento de Menores. Al respecto, señala que a los fines de computar la pensión alimentaria, se considerarán, entre otros, los siguientes factores:
“1. Los recursos económicos de los padres y del menor;
2. la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocaciones;
3. el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;
4. las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente, y
5. las contribuciones no monetarias de cada padre al cuidado y bienestar del menor.”
En cuanto a la determinación de los recursos económicos del alimentante, el Art. 19 de la referida Ley indica que deberá considerarse no sólo el ingreso neto ordinario, sino también el capital o patrimonio total de éste. Esta legislación establece, además, que a fines de realizar el cómputo proporcional de la pensión, se tomarán en cuenta iguales criterios de la persona custodia. Id.
Las Guías aprobadas al amparo de dicha Ley contienen la presunción de que una pensión fijada conforme a las mismas es justa y adecuada. No obstante, esta presunción es una controvertible, que puede ser rebatida en determinada situación por cualquiera de las partes.
La parte que ataque la aplicación de las Guías en determinada situación tendrá el peso de probar que la pensión resultante de la aplicación de las mismas en la situación de que se trate redunda en un resultado injusto o inadecuado. Torres Peralta, Sarah, Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico, Publicaciones STP Inc. (2006), pág. 9.05. A tales efectos, deberá presentar evidencia pertinente.
A fin de determinar la capacidad económica de un alimentante para proveer alimentos, un tribunal no está limitado a considerar únicamente evidencia testifical y documental sobre los ingresos. López v. Rodríguez, 133 D.P.R. 23, 33 (1988). Es por ello que puede considerarse, incluso por prueba circunstancial, aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. Argüello López v. Argüello García, supra; Chévere v. Levis, supra; Rodríguez Rosado v. Zayas Martínez, 133 D.P.R. 406, 412 (1993); López v. Rodríguez, supra.
De otra parte, en cuanto a la determinación de lo que constituyen ingresos, la Ley para el Sustento de Menores contempla una definición sumamente abarcadora, a saber:
*978 “(9) “Ingresos” significa cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno Federal de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también de los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica. Art. 2 de la Ley para el Sustento de Menores, supra, 8 L.P.R.A. see. 501, en su inciso (16).”
En tanto, la Ley define el “ingreso neto” como:
“(A)quellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingresos, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el alimentista sea beneficiario de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente.” Art. 2 de la Ley para el Sustento de Menores, 8 L.P.R.A. see. 501 (17).
El Artículo 4 de las Guías, que trata sobre las definiciones, indica que el ingreso neto, es el producto que se obtiene luego de descontarle a la totalidad de los ingresos, las deducciones mandatorias que establece la Ley. Es decir, que luego de determinarse el “ingreso bruto”, el cual conlleva el análisis de todas las posibles fuentes de ingreso con las que cuenta el alimentante, “entonces, deberá determinarse el ingreso neto, que es el punto de partida para la fijación de la pensión alimentaria.” Martínez Vázquez v. Rodríguez Laureano, supra.
De otra parte, luego de establecida la cuantía de la pensión alimentaria, el Art. 19 de la Ley para el Sustento de Menores, supra, establece que toda orden de pensión alimentaria podrá revisarse y modificarse luego de transcurridos tres años desde la fecha en que la orden fue establecida o modificada por última vez. No obstante, el aludido artículo le confiere a los tribunales la facultad para iniciar dicho procedimiento en cualquier momento y fuera del ciclo de tres años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor; o cuando exista cualquier otra evidencia de cambio sustancial en las circunstancias que dieron lugar a la pensión vigente.
Según interpretado por el Tribunal Supremo de Puerto Rico, esta disposición limita la discreción del Tribunal de Primera Instancia para modificar una pensión alimentaria vigente, ya se hubiere estipulado la pensión original, ya se hubiere establecido como resultado de un pleito contencioso, en el sentido de que es indispensable que ocurran cambios sustanciales significativos que justifiquen la modificación. No basta cualquier cambio en las circunstancias; éste tiene que ser sustancial con relación al estado de fortuna anterior. Tampoco pueden alegarse circunstancias que pudieron haberse alegado al momento de fijar la pensión que luego se pretende modificar. Véase Negrón Rivera, Ex parte, 120 DPR 61 (1987); López v. Rodríguez, supra. Torres Peralta Op. cit, págs. 2.40-2.43. Así, el peso de alegar y demostrar la procedencia de la modificación de una pensión alimentaria corresponde al reclamante en cada caso.
*979 ni
En su primer señalamiento de error, el Sr. Muñoz alega que el TPI incidió al establecer de forma final el monto adeudado por él como retroactivo sin celebrar la vista evidenciaría pautada con el propósito de que él demostrara la procedencia de los créditos reclamados contra dicho monto. Expone que tales vistas fueron suspendidas por causas justificadas, muchas de las cuales son atribuibles al propio TPI. Aunque acepta que no cumplió la orden del TPI relativa a la notificación a la recurrida de la prueba documental para establecer los créditos reclamados, precisa que el TPI violó su debido proceso de ley al dejar sin efecto unilateralmente la última vista señalada y resolver las controversias entre las partes sólo a base de los escritos sometidos. Le asiste la razón.
Hemos examinado minuciosamente tanto los documentos del Apéndice de la parte peticionaria como aquéllos presentados por la recurrida. Del examen de éstos, colegimos que el TPI erró al no celebrar una vista evidenciarla para dilucidar la procedencia de los créditos reclamados por el peticionario en cuanto al retroactivo de la pensión alimenticia adeudada antes de ordenarle que lo pagara.
En su alegato de oposición ante nos, la propia recurrida hace referencia a los eventos acaecidos después de que la EPA recomputó la pensión alimenticia luego de que este Tribunal de Apelaciones así lo ordenara. De este modo, expone que el 25 de febrero de 2009 presentó una moción aclaratoria respecto a varios asuntos, tales como la solicitud de desacato, y los honorarios y costas, los cuales se atendieron el día antes, en ocasión de otra vista celebrada en el caso. Además, señala que tal vista continuó el 6 de abril de 2009 ante el Hon. Iván Ayala Cádiz, quien la reseñaló para el 22 de mayo de 2009 ante el Hon. Yamil Marrero Viera. [7] La recurrida precisó que en tal vista “... del 22 de mayo de 2009, el Sr. Justo Muñoz alegó tener derecho a ciertos créditos”. [8]
Por otra parte, surge del expediente que la abogada del peticionario compareció a la vista de 22 de mayo de 2009 durante la cual el TPI le ordenó someter la prueba documental para la vista de desacato promovida por el alegado incumplimiento de él con el pago de la pensión alimenticia. Por ello, se recalendarizó tal vista para el 19 de junio de 2009, la cual no se celebró porque el TPI la dejó sin efecto mota prop rio, al solicitar a la recurrida que sometiera un proyecto de resolución y orden para resolver las controversias entre las partes. Tras tales eventos, el TPI emitió la Resolución y Orden aquí recurrida.
Del curso procesal relatado, se desprende que el TPI no le brindó al peticionario la oportunidad de establecer la procedencia de los créditos reclamados desde el 22 de mayo de 2009. El TPI se dejó llevar por los escritos en el expediente y resolvió las diversas controversias surgidas entre las partes sin atender los reclamos del Sr. Muñoz, lo que lesionó el debido proceso de ley de éste. Advertimos del expediente que el peticionario había reclamado tener derecho a ciertos.alegados créditos provenientes del pago de gastos de transportación para su hija menor, el pago de deducibles médicos y medicinas de los menores.
De otro lado, se desprende del expediente que el TPI omitió notificar directamente al peticionario de su intención de imponerle el pago inmediato del retroactivo. Notamos de la Resolución dictada por el TPI el 2 de abril de 2009 que con relación al monto del retroactivo fijado, el TPI le concedió al peticionario 15 días para informar su oferta de pago, pero no ordenó que se le notificara copia de la misma directamente al Sr. Muñoz. [9]
Es norma reiterada por el Tribunal Supremo de Puerto Rico que ante el incumplimiento de una parte a sus órdenes, el TPI no debe imponer primeramente la sanción más drástica, sino que debe agotar el variado catálogo de sanciones menores en forma gradual hasta llegar a la sanción más drástica. [10]
Acorde con lo expuesto, concluimos que se cometió el primer error señalado. Por lo tanto, procede modificar la Resolución y Orden recurrida para que el TPI celebre una vista evidenciaria en la que el peticionario pueda presentar su prueba sobre los alegados créditos que presuntamente podrían variar el monto *980 de la deuda retroactiva por pensión alimenticia.
En su segundo apuntamiento, el peticionario impugna la partida de $2,500 impuesta en la Resolución y Orden recurrida por concepto de honorarios de abogado como parte de los alimentos. Arguye que el TPI rebajó esa partida a $1,000, la cual ya pagó, en la orden de 18 de agosto de 2008. Por otro lado, cuestiona que se le impusiera el pago de $1,500 de honorarios por temeridad por las comparecencias de la recurrida en relación a las vistas señaladas, todo lo cual asciende a $5,000. El peticionario alega que dicha suma es excesiva y que no pueden subsistir dos conceptos para el pago de honorarios, a saber: alimentos y temeridad. Resolvemos.
El Artículo 22 de la Ley de ASUME, 8 L.P.R.A. see. 521, dispone en lo pertinente, lo siguiente:
“(1) En cualquier procedimiento bajo este capítulo para la fijación, modificación o para hacer efectiva una orden de pensión alimentaria, el tribunal, o el Juez Administrativo, deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando éste prevalezca.
(2) El tribunal, o el Juez Administrativo podrá imponer al alimentante el pago de honorarios de abogado a favor del alimentista al fijarse una pensión provisional.
(3)...”.
El Tribunal Supremo de Puerto Rico ha establecido que el concepto de alimentos se extiende a los honorarios de abogado de los alimentistas. En Guadalupe Viera v. Morell, supra, el Alto Foro resolvió que “[e]l concepto de alimentos cubre también los honorarios de abogado de los menores en una acción para reclamar alimentos.” La Profesora Sarah Torres Peralta expresó en este sentido:
“El derecho a honorarios, como parte integrante de los alimentos, existe sin que para su procedencia tenga que probarse la temeridad que en otros casos se requiere, conforme a la Regla 44.3 de Procedimiento Civil, y a la doctrina vigente. El requisito central es que el alimentista prevalezca en su reclamación alimentaria.
El esquema de reglamentación de los honorarios de abogado indica una determinación legislativa de proteger los derechos de los alimentistas, así como imponer la carga del pago de honorarios a los alimentantes. Denota, además, un evidente entendimiento de que la labor que usualmente realiza el abogado de relaciones de familia es eminentemente social. Es de conocimiento general que raras veces el abogado de familia que trabaja en ese foro por vocación tiene retribución económica proporcional a la labor de preeminente importancia que dicho profesional realiza en protección del derecho alimentario de menores o incapacitados. ...” [11]
Por otro lado, en cuanto a la imposición de honorarios de abogado por temeridad, la Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 44.1(d), en la parte pertinente, dispone:
“Honorarios de abogado - En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.
Se entiende que una parte ha sido temeraria cuando ésta ha obligado a la otra u otras partes a incurrir en gastos innecesarios al interponer pleitos frívolos, o alargar innecesariamente aquellos ya presentados ante la consideración de los tribunales, o que provoque que incurra o incurran en gestiones evitables.” Jarra Const, v. Axxis Corp., 155 D.P.R. 764 (2001); Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. 695 (1999); Oliveras, Inc. V. Universal Ins. Co., 141 D.P.R. 900 (1996).
El propósito de la imposición de honorarios por temeridad “es establecer una penalidad a un litigante *981 perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito.” Domínguez v. GA Life, 157 D.P.R. 690 (2002) a la pág. 22. Véase: P.R. Oil v. Dayco, 164 D.P.R. 486 (2005); Jarra Const, v. Axxis Corp., supra, Rivera v. Tienda Pitusa, Inc., supra; Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713 (1987). Es la acción de hacer necesario un pleito que se pudo haber evitado. Fernández v. San Juan Cement, Co., Inc., supra.
La temeridad no está definida en la regla antes citada, pero el Tribunal Supremo ha expresado en este respecto que la temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. La imposición de honorarios de abogado por temeridad descansa en la sana discreción del Tribunal. Al fijar la cuantía por concepto de temeridad, el tribunal debe tomar en consideración: 1) el grado de temeridad; 2) la naturaleza del procedimiento; 3) los esfuerzos y actividad profesional que se desplegó, y 4) la habilidad y reputación de los abogados. Véase; Santos Bermúdez v. Texaco P.R., Inc., 123 D.P.R. 351, 355-357 (1989).
Así, pues, la imposición de los aludidos honorarios gravita en la sana discreción del juzgador de hechos. En nuestro ordenamiento jurídico se ha entendido que la discreción es “una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera”. Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651 (1997); Pueblo v. Ortega Santiago, 125 D.P.R. 203 (1990); Pueblo v. Sánchez González, 90 D.P.R. 197 (1964). Dentro del ámbito judicial, el concepto de discreción “no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho”. Pueblo v. Sánchez González, supra, Bco. Popular de P.R. v. Mun. de Aguadilla, supra.
Como corolario, al momento del Tribunal de Instancia imponer honorarios de abogado tendrá bajo consideración, el grado o la intensidad de la conducta temeraria para determinar así la cantidad que habrá de imponer. Corpak, Art Printing v. Ramallo Brothers, 125 D.P.R. 724 (1990). De hallarse probada la actitud contumaz, frívola o temeraria por parte de la parte perdidosa, y habiéndose tomado bajo consideración el grado de la misma, este tribunal pasará a revisar la discreción que le fuera concedida a los tribunales de instancia por la Regla 44.1 (d) de las de Procedimiento Civil, supra.
Además, el Tribunal Supremo ha dispuesto, a modo de ejemplo, en qué instancias prevalece la temeridad: “(1) contestar una demanda y negar responsabilidad total...; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad...; (4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (5) negar un hecho que le conste es cierto a quien hace la alegación.” Blás v. Hosp. Guadalupe, 146 D.P.R. 267 (1998).
Del expediente se desprende que en la Resolución de 4 de agosto de 2008, el TPI ordenó al Sr. Muñoz que pagara a la recurrida la suma de $2,500 en honorarios al tenor del Artículo 22 de la Ley de ASUME como parte de los alimentos. [12] No obstante, en la Orden de 18 de agosto de 2008, el TPI aparenta haberla rebajado a $1,000, la que el peticionario pagó. Aunque así fuera, somos de opinión que el TPI está facultado para imponer honorarios como parte de los alimentos y reinstalar la partida de $2,500 originalmente impuesta. Claro está, se deberá reconocer el pago de $1,000 que el Sr. Muñoz efectuó, de ello proceder.
Acceder al planteamiento del peticionario equivaldría a dejar desprovistos de protección a sus hijos quienes, por medio de las gestiones de la recurrida, tuvo que contratar una abogada que los representara en las repetidas vistas e incidentes acaecidos en torno al cobro de la pensión alimenticia de ellos.
De otra parte, no hallamos base en nuestro derecho que sustente el planteamiento del peticionario de que no se le deben imponer honorarios por dos conceptos, alimentos y temeridad. En efecto, el Sr. Muñoz no *982 fundamenta la procedencia de tal reclamo. Al contrario, su escrito falla en atender pormenorizadamente este asunto de derecho. Tampoco hemos encontrado que el peticionario le planteara esta controversia al TPI antes de traerla a nuestra atención.
Somos del criterio que ante tales circunstancias le debemos entera deferencia al TPI en la fijación de los $2,500 de honorarios como parte de los alimentos y los $1,500 por temeridad. No se nos ha demostrado que el TPI abusara de su discreción al así fijarlos. Tampoco encontramos que los aludidos montos sean excesivos. No se cometió el segundo error.
En su tercer y último error, el peticionario cuestiona que el TPI adoptara un Proyecto de Resolución y Orden provisto por la recurrida alegadamente contradictorio en sus disposiciones y favorecedor de dicha parte.
De entrada, precisa señalar que el Canon 9 de los Cánones de Ética Judicial (2005) 4 L.P.R.A. Ap. IV-B, C. 9, establece que “[e]n cualquier asunto sometido a su consideración [los jueces y las juezas] podrán, cuando a su juicio lo requieran en fines de la justicia, solicitar proyectos de sentencia, resoluciones u órdenes, los cuales podrán ser utilizados como instrumento auxiliar”. La jurisprudencia atinente a los proyectos de sentencia o resolución requiere que los mismos sean utilizados por los jueces y juezas con cautela y como punto de partida o papeles de trabajo para confeccionar el dictamen de que se trate, por lo que no se deben firmar a ciegas. Ramón Cruz v. Díaz Rifas, 113 D.P.R. 500, 508 (1982); Báez García v. Cooper Labs. Inc., 120 D.P.R. 145 (1987).
Aplicada la normativa expuesta al caso ante nos, concluimos que el peticionario ha fallado en ponemos en posición de determinar que el TPI actuara irrazonablemente al alegadamente utilizar un Proyecto de Resolución y Orden provisto por la parte recurrida. Advertimos del récord que el TPI lo requirió abiertamente mediante la orden dictada el 3 de julio de 2009 y notificada, por lo que el peticionario estaba alertado de la probabilidad de que el mismo fuese suplido y utilizado por el TPI.
Por último, no encontramos base alguna en el expediente para concluir que el TPI firmó a ciegas o no usó con cautela el proyecto alegadamente suplido por la recurrida. En consideración a lo expuesto, concluimos que el tercer error no fue cometido.
IV
Por los fundamentos expuestos, se expide el auto de certiorari solicitado y se modifica la Resolución y Orden emitida el 15 de julio de 2009 y notificada el 21 de julio de 2009. Se devuelve el caso al TPI a los fines de que celebre una vista evidenciarla en la que se diluciden los créditos alegados por el peticionario, previa regulación del descubrimiento de prueba requerido para ello. El peticionario deberá proveer a la recurrida en el plazo perentorio razonable que el TPI determine la evidencia que habrá de someter para demostrar tales créditos, sin perjuicio de la facultad del TPI para imponer sanciones por el incumplimiento de sus órdenes. Así modificado, se confirma el dictamen impugnado.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 42

. En ese Informe, la EPA también recomendó al TPI imponer el pago de los honorarios de abogado cuando se estableciera la pensión alimenticia final.

. En el Informe de la EPA de 13 de mayo de 2008 se pormenorizan las partidas del retroactivo presuntamente adeudado por el peticionario. Apéndice del recuro, págs. 16 y 17.

. No obra en el expediente claramente a qué se refiere la orden del 13 de agosto de 2008, si a la de 4 de agosto de 2008 que fijó la suma de $2,500 por honorarios como parte de los alimentos o la de 18 de agosto de 2008.

. Apéndice del recuso, pág. 28.

. Recurso, pág. 5.

. Apéndice del recurso, pág. 56.

. Advertimos del expediente que en este litigio al menos han intervenido cinco jueces, a saber: Hon. Miguel Cando Bigas, Hon. Eric V. Kolthoff Caraballo, Hon. Jorge Toledo Reyna, Hon. Iván Ayala Cádiz y el Hon. Yamil Marrero Viera.

. Alegato (sic) de la recurrida, pág. 7. De la Minuta de la vista de seguimiento celebrada el 6 de abril de 2009 ante el Juez Ayala Cádiz, se desprende que éste refirió el caso al Juez Marrero Viera porque había intervenido en el mismo a los fines de que le diera seguimiento. Por ello, reseñaló la vista para el 22 de mayo de 2009. Apéndice de la recurrida, pág. 13.

. Apéndice del recurso, págs. 53 y 54.

. Véase Mun. de Arecibo v. Almac. Yakima, 154 D.P.R. 217 (2001); Amaro González v. First Fed. Savs., 132 D.P.R. 1042 (1993); Maldonado v. Recursos Naturales, 113 D.P.R. 494 (1982).

. Torres Peralta Sarah, La Ley de sustento de menores y el derecho alimentario en Puerto Rico, Publicaciones STP Inc., 2007, págs. 5.41-5.42.

. Apéndice del recurso, págs. 26 y 27.