Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| GRAHAM A. CASTILLO PAGÁN<br><br>Apelante<br><br>LAURA R. RIVERA AVILÉS<br><br>Apelada<br><br>EX PARTE | KLAN202300443 | Apelación procedente del Tribunal de Primera Instancia Sala de Superior de Caguas<br><br>Caso Núm.:<br>E DI2005-0509<br><br>Sobre:<br>Divorcio |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de septiembre de 2023.

Comparece el Sr. Graham A. Castillo Pagán (apelante o señor Castillo Pagán) y solicita que revisemos dos *Resoluciones* emitidas por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). En particular, se requiere la revisión de una Resolución emitida el 13 de abril de 2023, notificada el 19 de abril, en la que se estableció la fecha desde cuando surgió una obligación de pago, por parte del apelante, fijada por el referido foro en una previa Resolución de 28 de febrero de 2023, notificada el 8 de marzo. En esta última, el TPI, en base de la prueba desfilada y los principios de equidad, reconoció a la Sra. Laura R. Rivera Avilés (en adelante la senora Rivera Avilés o la apelada) el derecho a recibir el 50% de la cantidad mensual por concepto de la pensión militar del apelante. La otra Resolución que se nos solicita que revisemos, con fecha de 20 de abril de 2023, declaró *Sin Lugar* la Solicitud de Determinaciones de Hechos presentada por el señor Castillo Graham[1].

---

[1] Notificada el 21 de abril de 2023.

Con el beneficio de la comparecencia de ambas partes, y por los fundamentos que esbozaremos a continuación, confirmamos las determinaciones del TPI.

**-I-**

La controversia ante nuestra consideración se deriva de las antes indicadas actuaciones del TPI, realizadas, a su vez, como parte del cumplimiento de dicho Foro con las disposiciones de una Sentencia emitida el 12 de enero de 2022 por un Panel Hermano en el caso KLAN2022100774. En este sentido, procedemos a plasmar una relación fáctica y procesal de lo acontecido en el caso. De igual manera, debido a su pertinencia, será necesario que hagamos recurrentes referencias a la antedicha Sentencia en el caso KLAN202200774.

El señor Castillo Pagán y la Rivera Avilés estuvieron casados, bajo el régimen económico de sociedad legal de gananciales, por 24 años. Durante la vigencia del matrimonio, el señor Castillo Pagán fue miembro de las Fuerzas Armadas de los Estados Unidos. Así las cosas, en abril de 2005 las partes solicitaron la disolución del matrimonio por acuerdo mutuo, por lo que el TPI, luego de celebrar la vista de rigor, el 15 de abril de 2005 emitió una *Sentencia* en la que aprobó los acuerdos alcanzados por las partes y decretó disuelto el matrimonio. Entre los acuerdos presentados ante el Tribunal y aprobados por este, se incluyó lo siguiente:

> *El peticionario mantendrá a la peticionaria como beneficiaria de la pensión militar que se acredita por estar casada por veinte años con el militar compartiendo la vida familiar. Este beneficio es reconocido por el ejército únicamente a las esposas que lleguen a cumplir los 20 años de casadas con el militar. Spouse Benefit Plan y Survivor Benefit Plan se otorgan al militar morir o retirarse de las Fuerzas Armadas, cumpliendo la edad que requiere el estatuto.*

El 17 de septiembre de 2020, la apelada presentó una *Urgente moción solicitud de orden* en la que alegó que el señor Castillo Graham se encontraba en incumplimiento con lo dispuesto en la cláusula previamente transcrita. Luego de varios incidentes, el TPI

emitió una orden de retención de ingresos (ORI) dirigida al *Defense Finance and Accounting Services, Garnishment Law Directorate* para que se remitiera en favor de la apelada el 50% de la pensión de retiro del apelante.

En aquel momento, y no conforme con el proceder del TPI, el señor Castillo Pagán presentó ante este tribunal un recurso legal de apelación.[2] Evaluado los planteamientos de las partes, un Panel Hermano emitió el 12 de enero de 2022 la Sentencia a la que antes hicimos referencia,[3] en la cual, al revocar la orden de retención de ingresos emitida, dispuso, luego de concluir que los tribunales de Puerto Rico tienen jurisdicción para adjudicar el derecho de un excónyuge a participar en la pensión de retiro de un militar de conformidad con el ordenamiento puertorriqueño sobre división de bienes gananciales, lo siguiente:

> *Ahora bien, al examinar la sentencia de divorcio es evidente que el acuerdo objeto de la controversia y cuyo alcance podemos revisar, se incluyó entre los acuerdos relacionados a la división de bienes. De su lenguaje surge que el señor Castillo se obligó a <u>mantener</u> a la senora Rivera como beneficiaria de su pensión de retiro militar. Considerando la definición del término **mantener** entendemos que con dicho acuerdo el señor Castillo se obligó a darle vigor y permanencia al derecho de la señora Rivera a participar de su pensión militar por haber estado casada con él por al menos 20 años. Además, coetáneo a la estipulación de este acuerdo las partes también acordaron que el señor Castillo proveería una pensión excónyuge a la señora Rivera durante 15 años o hasta contraer nuevas nupcias. Por tanto, del lenguaje del acuerdo estipulado y de los actos coetáneos al mismo, es forzoso concluir que no se configura una obligación de pensión alimentaria ni de pensión excónyuge.* (Subrayado y negrillas en el original)
>
> *[…]*
>
> *En síntesis, no procedía que el TPI emitiera una ORI utilizando el formulario OMB-0970-0154 para el cumplimiento de una obligación de pensión excónyuge, cuando lo que se pretendía poner en vigor es una estipulación entre las partes sobre división de bienes.*

De igual forma, el Panel Hermano concluyó:

> *De otro lado, de la estipulación en controversia no surge que las partes hayan acordado una cuantía especifica de la pensión de retiro a la que la senora Rivera tendría derecho.*

---

[2] Como nos solicitó el apelante, tomamos conocimiento judicial del recurso legal **KLAN202100774.**
[3] Apéndice de *Apelación*, pp. 15 – 32.

*De manera que no estamos en posición de asumir si con esta estipulación el señor Castillo tenía la intención de ceder una porción de su pensión de retiro militar a favor de la señora Rivera. Por consiguiente, el lenguaje de la estipulación no configuró una obligación para que el señor Castillo pagara determinada cantidad una vez comenzara a recibir su pensión de retiro. A tales efectos, el foro de instancia no podía ordenar de manera arbitraria que se retuviera el 50% de lo que el señor Castillo alegadamente recibe como pensión. En ausencia de un acuerdo entre las partes en torno a la cuantía, la participación de la señora Rivera en la pensión de retiro del señor Castillo debía determinarse de conformidad con el derecho sustantivo local aplicable a la división de bienes. En particular, lo referente al derecho de un excónyuge sobre la pensión de retiro de un militar.*

*Es preciso reiterar que las órdenes judiciales sobre división de bienes que el DFAS puede ejecutar deben incluir, entre otros asuntos, la cuantía específica de la pensión militar a la que el excónyuge tiene derecho. En este caso la sentencia de divorcio no cumple tal formalidad ya que meramente aprobó el acuerdo entre las partes el cual no establece cuantía alguna. De manera que, ante la ausencia de un acuerdo entre las partes sobre la cuantía, es necesario que el foro de instancia establezca la cantidad a la que ésta tiene derecho, si alguna, y emita la determinación correspondiente. La señora Rivera podrá entonces presentar la solicitud correspondiente acompañada de dicha orden ante el DFAS para su oportuna ejecución.*

*Adviértase que nuestro ordenamiento reconoce el carácter privativo de la pensión de retiro de un militar. Véase, Delucca Román v. Colón Nieves, supra, pág. 723. No obstante, dispone que las aportaciones realizadas al plan de retiro a costa del caudal común durante el matrimonio, son de naturaleza ganancial, por lo que la sociedad legal de gananciales tiene derecho a un crédito por el importe total de dichas aportaciones al momento de su disolución. Dicho crédito corresponde en partes iguales a cada excónyuge.*

*Por los fundamentos que anteceden revocamos la determinación recurrida y dejamos sin efecto la Orden de Retención de Ingresos emitida. Devolvemos el caso al Tribunal de Primera Instancia para que, en ausencia de un acuerdo entre las partes sobre la cuantía de la pensión del señor Castillo a la que la señora Rivera tendría derecho, el foro de instancia determine el monto de las aportaciones realizadas al plan de retiro durante la vigencia del matrimonio para establecer la cuantía a la que tendría derecho según dispone nuestro ordenamiento.[4]*

Como secuela de lo anterior, se reanudaron los procedimientos ante el foro primario. Concluidos los mismos, el TPI emitió su *Resolución* el 28 de febrero de 2023, en la que consignó las siguientes determinaciones de hecho:

1. *Las partes contrajeron matrimonio el 20 de diciembre de 1980 en San Juan, Puerto Rico, bajo el régimen económico de sociedad de gananciales. Adquirieron bienes y deudas durante la vigencia del matrimonio.*

---

[4] *Id.*, pp. 31-32.

2. *El día 15 de abril de 2005, solicitaron la disolución del vínculo matrimonial por la causal de consentimiento mutuo. Sometieron Petición por derecho propio debidamente juramentada y acompañaron Estipulación recogiendo acuerdos de custodia, patria potestad, pensión alimentaria, relaciones paternofiliales, pensión excónyuge, división de bienes inmuebles y deudas de la sociedad de gananciales y división de bienes muebles. Ambos se representaron por derecho propio, pues son abogados de profesión.*

3. *Las partes acordaron bajo el encasillado DIVISIÓN DE BIENES MUEBLES lo siguiente:*
   *… "12. El peticionario mantendrá a la peticionaria como beneficiaria de la pensión militar que se acredita por estar casada por veinte años con el militar compartiendo la vida militar. Este beneficio es reconocido por el ejército (sic) únicamente a las esposas que llegan a cumplir los 20 años casadas con el militar. Spouse Benefit Plan y Survivor Benefit Plan se otorgan al militar morir o retirarse de las Fuerzas Armadas, cumpliendo la edad que requiere el estatuto. …"*

   *El señor Castillo prestó su consentimiento a estas estipulaciones de forma libre y voluntaria, sin mediar coacción, fuerza o violencia.*

4. *El Sr. Castillo no solicitó modificación ni enmienda a las estipulaciones sometidas y el día 15 de abril de 2005 se dictó Sentencia que fue enmendada el 27 de junio y notificada el 7 de julio para incluir las estipulaciones sobre la liquidación de gananciales. La Sentencia advino final y firme por no haberse interpuesto recurso apelativo. El Sr. Castillo no solicitó enmienda o reconsideración a la Sentencia dictada. Concluimos que las partes estuvieron casadas por 24 años.*

5. *Ambas partes son abogados. El Sr. Castillo, estando casado con la Sra. Rivera, trabajó como Abogado en Fort Buchanan, PR, y Asistente de Fiscalía Federal en el Judge Advocate General (JAG) como miembro del Judge Advocate General Corp. Entró con el rango de Segundo Teniente y terminó con el rango de Teniente Coronel.*

6. *La Sra. Rivera acompañó al Sr. Castillo durante las misiones que fue designado viajando por distintos países del mundo.*

7. *El Sr. Castillo comenzó para el año 1977 al 1981 en el ROTC de Cayey. Estuvo activo desde 1984 hasta 1994 que fue transferido a la Reserva. Para los años 2004 – 2005 fue reactivado para Bagdad como reservista.*

8. *La Sra. Rivera cumple con el test 20/20 para conferirle todos los beneficios ("full benefits"). El término mínimo de 20 años de matrimonio fue dentro del término de servicio militar del Sr. Castillo. Veinticinco años de activo y veinte años casados durante ese mismo periodo.*

9. *La pensión de retiro militar comienza cuando el miembro del ejercito cumple 60 años. El Sr. Castillo advino a esa edad el 1 de noviembre de 2018.*

10. *El Sr. Castillo comenzó a recibir desde el 1 de noviembre de 2018 la suma mensual de $3,334.97 por concepto de pensión militar.*

11. *El sistema de retiro militar de la Reserva del Ejercito de E.U.A. (U.S. Army Reserve) está reglamentado por el "Army Regulation 140–185 (Training and retirements Points Credits and Unit Level Strengh Accouting Records"). Se fundamenta en un sistema de "puntos de retiro" que se adjudican de acuerdo con la participación anual del soldado. Básicamente se le asigna un (1) punto de retiro por cada día de participación al soldado en servicio o por cada 4 horas en adiestramiento/participación inactiva.*

12. *Al momento de computar la cuantía de la pensión por retiro del soldado, se le asigna un valor en "metálico" a los puntos basado en "rango y tiempo de servicio" del soldado.*

13. *Al momento de que el Sr. Castillo entró a la Reserva del Ejército de Estados Unidos fue al amparo de esta reglamentación y estaba casado con la Sra. Rivera. Los puntos acumulados durante los años de servicio militar se adquirieron durante la vigencia de la Sociedad Legal de Gananciales compuesta por las partes.*

14. *Aunque no hay contribución económica del soldado bajo este sistema, lo cierto es que los "puntos de retiro" tienen un valor monetario para convertirlos al estimar la cuantía de la pensión de retiro.*

15. *Para calificar que en un año de servicio en la US Army Reserve sea bueno para retiro tiene que haber acumulado no menos de 50 puntos de retiro el soldado.*

16. *El Sr. Castillo conocía plenamente este sistema de cómputo de puntos de la pensión militar del US Army Reserve por su preparación académica militar y su profesión de abogado militar y federal en el Fuerte Buchanan, P.R.*

17. *El Sr. Castillo, como parte de la liquidación de bienes muebles entre ellos, tuvo la intención de que su pensión de retiro militar formara parte del inventario de bienes sujetos a liquidación. El que no se haya determinado la cantidad o por ciento que recibiría la Sra. Rivera, no le resta o despoja de su carácter de ser un bien divisible de la sociedad de gananciales.*

18. *El testimonio del Sr. Castillo de que incluyó la cláusula 12 de la Estipulación reconociendo a la Sra. Rivera como beneficiaria de su pensión militar para complacerla no nos convence, dada su educación como abogado en el ejercicio de su profesión, así como sus actos posteriores.*

19. *El Tribunal de Apelaciones en el caso Núm. KLAN2021–00774 en su Sentencia del 12 de enero de 2022, según en su análisis concluyó y citamos, … "al examinar la sentencia de divorcio es evidente que el acuerdo objeto de controversia y cuyo alcance podemos revisar, se incluyó entre los acuerdos relacionados a la división de bienes. De su lenguaje surge que el Sr. Castillo se obligó a <u>mantener</u> a la Sra. Rivera como beneficiaria de su pensión de retiro militar. Considerando la definición del término **mantener** entendemos que con dicho acuerdo el Sr. Castillo se obligó a darle vigor y permanencia al derecho de la Sra. Rivera a participar de su pensión militar por haber estado casada con él por lo menos 20 años." …*

20. *La Sra. Rivera declaró que la intención de ambos al llegar a dicho acuerdo lo fue protegerla, pues lamentablemente, en la jurisdicción de Puerto Rico existe disparidad y no se ha*

*reconocido dicho derecho a los ex-cónyuges de manera automática como en la mayoría de los estados de Estados Unidos.*

21. *La Sra. Rivera declaró sobre cómo finalizados sus estudios de derecho y aún sin revalidar, se mudó junto a su esposo fuera de Puerto Rico a Indianapolis. Luego a Alemania, de donde viajaron a Puerto Rico a tomar la reválida de derecho. Ésta comenzó a ejercer como licenciada en 1994.*

22. *La Sra. Rivera declaró que, al momento de contraer matrimonio en el año 1980, ya el Sr. Castillo pertenecía al ROTC. Al igual que al momento del divorcio, el Sr. Castillo pertenecía la Reserva de los Estados Unidos. Debido a esto, cumplía con el requisito de 20/20, 20 años activo el cónyuge y 20 años o más de matrimonio.[5] [sic]*

En la citada *Resolución*, el TPI determinó que la señora Rivera Avilés tenía derecho a recibir el 50% de la cantidad mensual de la pensión militar que recibe el señor Castillo Pagán.[6] Según el texto de la referida determinación, surgió de la equidad y en el ánimo de impartir justicia. Posteriormente, el apelante solicitó determinaciones de hechos adicionales[7], oportunamente, la apelada se opuso[8], y el TPI declaró *Sin Lugar* dicha solicitud[9].

El 13 de abril de 2013 notificada el 19 del mismo mes y año, el TPI emitió otra *Resolución*.[10] Tal y como se expresó previamente, luego de establecer el momento desde que surgió la obligación, concluyó que, según su cómputo a la señora Rivera Avilés se le adeudaba la cantidad de $71,412.00.

Inconforme con el proceder del foro de instancia, el apelante recurrió ante nos mediante el recurso legal epígrafe, y señaló los siguientes errores:

1. *Erró el Honorable Tribunal de Primera Instancia Sala de Caguas, al no cumplir con las instrucciones del TA que instruyó al TPI para que se resolviera el asunto conforme al ordenamiento jurídico vigente, para atender cuánto fueron las aportaciones de la Sociedad de Bienes Gananciales al retiro del militar vigente el matrimonio. Una vez se determinará cuánto fue el monto de las aportaciones, correspondía entonces adjudicar la mitad de las aportaciones a cada cónyuge.*

---

[5] Apéndice de *Apelación*, pp. 10 – 12.
[6] Según el TPI, el pago a la Señora Rivera sería retroactivo a la fecha en que se recibió el primer pago de la pensión militar.
[7] Apéndice de *Apelación*, pp. 33 – 36.
[8] Apéndice de *Apelación*, pp. 37 – 39.
[9] Apéndice de *Apelación*, pp. 1.
[10] Apéndice de *Apelación*, pp. 2 – 3.

2. *Erró el TPI de Caguas, al resolver a base de equidad contrario a nuestro ordenamiento jurídico y no acatar la determinación del caso del Tribunal Supremo Rosa Resto y De Lucca y de mandato del foro Apelativo.*

3. *Erró el TPI de Caguas, al resolver retroactivo no solicitado a una fecha que ninguna de las partes solicitó y procedió a enmendar Resolución.*

4. *Erró el TPI de Caguas, al imponer la temeridad a la parte Apelante al resolver una controversia por equidad, apartándose del estado de derecho del caso.*

**-II-**

-A-

El *Uniformed Services Former Spouses Protection Act*, es un estatuto federal que autoriza a los tribunales estatales a tratar el pago de retiro de un militar como propiedad sujeta a división de bienes. 10 USC sec. 1408 (c)(1). Expresamente esta legislación incluye a los tribunales del Estado Libre Asociado de Puerto Rico entre aquellos con competencia sobre esta materia. 10 USCA Sec. 1408 (a)(1)(A).

Así las cosas, el Tribunal Supremo de Puerto Rico ha resuelto el derecho sustantivo local es el aplicable cuando lo que está en controversia es si la pensión de retiro que le conceden las Fuerzas Armadas a sus miembros se considera como un bien privativo del miembro, o un bien ganancial de la sociedad de gananciales constituida por éste y su cónyuge. *Delucca Román v. Colón Nieves*, 119 DPR 720 (1987). En el citado caso el Tribunal Supremo, luego de efectuar un análisis de la situación planteada y tras hacer referencia a jurisprudencia anterior concluyó que en Puerto Rico la pensión de retiro pertenecía a la persona a quien se le concedía por los años de servicio que ésta había prestado, y que por lo tanto era de carácter privativo. Es decir, se reafirmó la naturaleza privativa de derecho a pensión y se rechazó que éste estuviera sujeto a división al momento de la disolución de una sociedad de gananciales.

-B-

En el divorcio por consentimiento mutuo, como regla general, el juez aceptará los acuerdos a los que lleguen las partes, los cuales tendrán el efecto de **cosa juzgada**. En relación con la naturaleza de las estipulaciones incluidas en la petición de divorcio por consentimiento mutuo, **éstas tienen la naturaleza de un contrato de transacción judicial que obliga a las partes**. Esto en atención a que dichas estipulaciones ponen fin a un litigio e incorporan unos acuerdos en el proceso judicial en curso. *Náter v. Ramos*, 162 DPR 616 (2004); *Igaravidez v. Ricci*, 147 DPR 1 (1998); *Ex parte Negrón Rivera y Bonilla*, 120 DPR 61 (1987); *Magee v. Alberro*, 126 DPR 228 (1990).

Abundando sobre las estipulaciones establecidas por los cónyuges en procedimientos de divorcio no contencioso, en *Náter v. Ramos, supra,* se citó con aprobación expresiones del Prof. Carlos María Entrena Klett en su obra *Matrimonio, separación y divorcio en la legislación actual y en la historia*:

> En cuanto a las estipulaciones puramente económicas post-conyugales (temas de vivienda, ajuar, distribución de los bienes, ayuda económica, etc.), las partes son soberanas para decidir y acordar, debiendo respetar su criterio el juez salvo que lo acordado sea 'gravemente perjudicial' para uno de los esposos… y al adverbio 'gravemente' restringe muy mucho las posibilidades de intervención de la autoridad judicial. Como vemos, el legislador deja esta materia al arbitrio de los esposos, pero no se le oculta la posibilidad de que uno de ellos pueda ser de inferior nivel de voluntad o de inteligencia que el otro, o pueda estar tan cansado del contencioso planteado, de sus problemas y discusiones inherentes que acabe por pasar por las horcas caudinas de las exigencias de su contraparte; a evitarlo o paliarlo tiene este precepto. Entrena Klett, *Matrimonio, separación y divorcio en la legislación actual y en la historia,* 2da ed., Pamplona, Ed. Aranzadi, 1984, pág. 663.

-C-

Como regla general, este tribunal no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad de sustituir por sus propias apreciaciones, las determinaciones del foro

de instancia. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717 (2007); *Rolón v. Charlie Car Rental*, 148 DPR 420 (1999). Esto es, los tribunales apelativos debemos mantener deferencia para con la apreciación de la prueba que realiza un tribunal de instancia. *McConnell Jiménez v. Palau*, 161 DPR 734 (2004). En vista de esta deferencia, los tribunales apelativos no intervendremos "con la apreciación de la prueba reflejada en las determinaciones de hechos del tribunal apelado en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio o parcialidad, o que cometió un error manifiesto". *Gómez Márquez, et als. v. Periódico El Oriental, et als*, 203 DPR 783(2020); *Ramos Milano v. Wal-Mart Puerto Rico*, 168 DPR 112 (2006). En este sentido, para ejercer nuestra función revisora a cabalidad, la parte que señala un error en la apreciación o la suficiencia de la prueba testifical debe presentar una transcripción, una exposición estipulada o una exposición narrativa de la prueba. Regla 19 (A) del Reglamento de este Tribunal, 4 LPRA XXI-B, R. 19 (A). En cuanto al procedimiento a seguir para la producción de la transcripción de la prueba oral, véase la Regla 76 (A) de nuestro Reglamento, *supra.*

-D-

La Regla 43 de Procedimiento Civil, *supra*, permite a una parte adversamente afectada por una orden, resolución o sentencia del TPI, la oportunidad de presentar una moción de determinaciones de hechos adicionales dentro del término de quince (15) días desde la fecha de archivo en autos de copia de la notificación de la orden, resolución o sentencia. La moción debe exponer con suficiente particularidad y especificidad los hechos y el derecho que se estima deben reconsiderarse.

-E-

Las Reglas de Procedimiento Civil, *supra*, permiten a los tribunales imponer el pago de una suma por concepto de honorarios

de abogado a una parte que actúa con temeridad durante el proceso judicial. A esos efectos, la Regla 44.1 (d) de las de Procedimiento Civil, 32 LPRA Ap. V, dispone:

> (d) En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso que el Estado Libre Asociado de Puerto Rico, sus municipios agencias o instrumentalidades, haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

El Tribunal Supremo de Puerto Rico ha definido el concepto temeridad como la actuación terca, obstinada, contumaz y sin fundamentos, de un litigante que obliga a la otra parte innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *Flores Berger v. Colberg*, 173 DPR 843 (2008), citando a *Rivera v. Tiendas Pitusa*, 148 DPR 695 (1999); *Domínguez v. G.A. Life*, 157 DPR 690 (2002). La determinación de temeridad es un asunto discrecional de los tribunales de instancia y los tribunales apelativos solo pueden intervenir ante la existencia de abuso de discreción. Íd. El requisito de la existencia de una actuación temeraria hace que la Regla 44.1 de Procedimiento Civil, supra, tenga el propósito de penalizar o sancionar a la parte que incurre en la conducta proscrita por dicha regla. *Corpak, Inc. v. Ramallo Brothers Printing, Inc.*, 125 DPR 724 (1990).

**-III-**

En su *Oposición a Solicitud de Desestimación* presentada el 20 de julio de 2023, la parte apelante sostuvo que "Aclaramos que la apelación de esta parte no es por apreciación de la prueba y que el abuso de discreción se basa en el craso incumplimiento con la directriz de este Ilustrado Foro sobre el asunto que tuvo a ante su consideración bajo el KLAN202100774." A continuación, añadió: "Es ante el desvío de la directriz que esta parte alega que el TPI abusó

de su discreción por lo que por lo menos para el apelante, no creemos necesario que se eleven los autos, porque la resolución es clara sobre el uso de la equidad, y no de lo ordenado por el TA."[11] En este sentido, debemos consignar que por elección propia el apelante no presentó ninguno de los métodos de impugnación de la prueba oral que contempla la Regla 19 de nuestro Reglamento, *supra*. En consecuencia, no nos puso en posición de revisar la apreciación de la prueba realizada por el foro sentenciador como consecuencia de la celebración de los procedimientos ordenados por el Panel Hermano en el referido caso KLAN202100774. Al respecto, conviene recordar que cuando se trata de rebatir las conclusiones de hecho formuladas por el tribunal de primera instancia, los foros apelativos no podemos intervenir con las determinaciones de hecho, la apreciación de la prueba oral o la adjudicación de credibilidad efectuadas por aquel en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Así lo dispone expresamente la Regla 42.2 de Procedimiento Civil, 32 LPRA, Ap. V, R. 42.2. De forma particular, dicha Regla establece que las determinaciones de hecho que se basen en testimonio oral "no se dejarán sin efecto a menos que sean claramente erróneas", además de ordenar a los tribunales apelativos a prestarle debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad los testigos. *Trinidad García v. Chade*, 153 DPR 280 (2001).

Establecido lo anterior, debemos precisar que no coincidimos con la interpretación efectuada por la propia parte apelante a los efectos de que su recurso no se basa en apreciación de la prueba. En primer lugar, la celebración de la vista evidenciaria -la que se extendió durante varios días y en la que declararon varios testigos- ante el foro primario fue con el propósito de, precisamente,

---

[11] Véase *Oposición a Solicitud de Desestimación* presentada por la parte apelante el 20 de julio de 2023.

establecer hechos que permitieran adjudicar la controversia entre las partes. Cabe señalar que, de su apreciación de la prueba desfilada en esta vista, el TPI formuló 22 determinaciones de hecho. Abona a esta conclusión la presentación, por parte del propio apelante, de una solicitud de determinaciones de hechos adicionales ante el TPI.

Así las cosas, considerada la Resolución emitida por el TPI luego de celebrada la vista evidenciaria concluimos, por los fundamentos antes expuestos, que la parte apelante no nos ha puesto en condiciones de dejar sin efectos las determinaciones de hecho plasmadas por el foro primario. Esta conclusión, sin embargo, no dispone de la controversia, pues como establecimos previamente, en su comparecencia la parte apelante argumenta que el TPI se apartó de lo instruido por el Panel Hermano del Tribunal de Apelaciones. Sin embargo, una lectura de la totalidad de la Sentencia de dicho Panel, unida a los hechos particulares de este caso, consignados adecuadamente por el TPI en sus determinaciones de hechos, validan la conclusión de dicho foro como una razonable y correcta. Además, las antedichas circunstancias establecen la inaplicabilidad de la norma general establecida en *Delucca Román v. Coló Nieves, supra.*

Tal y como fuera previamente transcrito, en su Sentencia el Panel Hermano estableció que al evaluar la sentencia de divorcio era evidente que la estipulación objeto de la controversia se incluyó entre los acuerdos relacionados a la división de bienes y que de su lenguaje se desprende que el apelante se obligó a **mantener** a la apelada como beneficiaria de su pensión de retiro militar. En sentido, al igual que el TPI y el Panel Hermano, consideramos que con dicho acuerdo el señor Castillo Pagán se obligó a darle vigor y permanencia al derecho de la señora Rivera Avilés a participar de su

pensión militar por haber estado casada con él por al menos 20 años.

A lo anterior opone el apelante que es clara la norma en nuestra jurisdicción sobre el carácter privativo de las pensiones militares de retiro y que ante dicha circunstancia, y en cumplimiento con la Sentencia del Panel Hermano, el TPI solo tenía que determinar el monto de las aportaciones efectuadas por la sociedad legal de gananciales al referido plan de retiro. Así, una vez determinado que la aportación económica de la sociedad de bienes gananciales fue cero, sostiene que el TPI abuso de su discreción al no determinar que la participación de la apelada debía ser ninguna. Sin embargo, surge de las determinaciones de hecho consignadas por el TPI que si bien no hubo una aportación monetaria de la sociedad de bienes gananciales, el sistema de puntos por retiro establecido para los miembros de las fuerzas armadas tiene un valor monetario el que se convierte para estimar la cuantía de la pensión de retiro.

Unido a lo anterior, debemos reiterar la particularidad de los hechos del caso ante nuestra consideración, donde el apelante, abogado empleado en las Fuerzas Armadas, aceptó y ratificó en las estipulaciones conducentes al divorcio por consentimiento mutuo que mantendría el derecho de la apelada de participar de su pensión por estar casada con él por al menos 20 años. Conforme al estado de Derecho antes expuesto, las estipulaciones en ese tipo de procedimiento constituyen cosa juzgada y tienen la naturaleza de un contrato de transacción judicial que obliga a las partes. La determinación de hecho del TPI de que no le convenció el testimonio del apelante a los efectos de que dicha estipulación fue incorporada para complacer a la apelada, con el efecto de tornar la misma en inconsecuente, merece, nuevamente, nuestra deferencia, al igual que la conclusión de que en este caso al momento de aceptar la

estipulación el apelante tuvo la intención de hacer partícipe a su ex cónyuge de su pensión de retiro. Esta es la interpretación lógica y procedente ante el reconocido principio de que en caso de duda en cuanto a la interpretación de una estipulación, los tribunales adoptarán aquella contención que sea más favorable a la parte a cuyo favor se hizo la estipulación. Sin lugar a dudas, la estipulación en controversia, adoptada de forma libre y voluntaria por el apelante, fue en beneficio de la apelada. A esto se añade el hecho de que el apelante, por su condición de abogado de las Fuerzas Armadas, debió conocer que para cualificar para pensiones militares no se efectúan aportaciones económicas y aun así decidió estipular una división de la misma con su ex cónyuge. En cuanto al porciento de la pensión que el TPI concluyó que debía serle remitido a la apelada, notamos que el mismo tiene sustento en la norma general de que, a falta de acuerdo en contrario, al liquidarse la sociedad conyugal, los bienes se dividen por mitad, cualquiera que sea el monto de los aportes de cada cónyuge y aunque uno de ellos no haya aportado nada.[12] Ello debe ser así, por que fue precisamente como parte de las estipulaciones respecto a la división de los bienes gananciales que se estipuló la permanencia de la apelada como beneficiaria, al darle vigor y permanencia a su derecho a participar de la pensión militar por haber estado casada con el apelante por más de 20 años.

Ahora bien, en cuanto a la Resolución de 13 de abril de 2023 en la que se estableció el momento desde que surgió la obligación de efectuar el pago previamente determinado, sostiene el apelante que la misma es improcedente porque ninguna parte la solicitó y porque no se trata de un caso de alimentos. Ante dicho señalamiento resulta de aplicación la norma de que de los tribunales tienen el

---

[12] Véase, Art. 1295 del derogado Código Civil, 31 LPRA sec. 3621, vigente a la fecha de la estipulación y la Sentencia de divorcio.

poder inherente de enmendar, corregir o reconsiderar sus determinaciones, a solicitud de una parte o motu proprio, siempre que, al actuar de esa manera, todavía conserven jurisdicción. En este caso, la Resolución impugnada tuvo el efecto de aclarar la vigencia de una determinación previa, con el efecto de aclarar a todas las partes el alcance de la determinación judicial inicial y, previsiblemente, evitar una controversia adicional sobre un aspecto que al entender del TPI no resultó claramente finiquitado.

En vista de lo antes resuelto resulta innecesario expresarnos sobre el señalamiento de error que cuestiona al foro primario resolver basado en la equidad. Es suficiente señalar que a pesar de que el TPI manifestó que resolvía considerando los principios básicos de la equidad, lo cierto es que en atención a los hechos particulares ante nuestra consideración, así como el derecho aplicable, la solución alcanzada por el foro primario se ajusta a los parámetros de nuestro estado de Derecho, por lo que la referencia a dichos principios es inconsecuente y no afecta el resultado alcanzado.

Por último, y conforme a lo previamente expresado, la determinación de temeridad es un asunto discrecional de los tribunales de instancia y los tribunales apelativos sólo podemos intervenir en dichas adjudicaciones ante la existencia de abuso de discreción. Toda vez que no surge del expediente tal circunstancia, no nos corresponde modificar la conclusión del foro primario.

-IV-

Por los fundamentos que anteceden, confirmamos las determinaciones recurridas.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones